[No. 3,826.]

# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* THE STOCKTON and COPPEROPOLIS RAILROAD COMPANY and CERTAIN REAL ESTATE.

Statement of Property Furnished to an Assessor.—If, in an action to recover a tax brought against a railroad company, the company avers in its answer that its superintendent furnished the Assessor with a written statement of the real estate belonging to the company, the company cannot, on the trial, be heard to dispute the authority of its agent to give a list of its property, nor to deny that the property contained in the list belonged to the company.

Idem.—Such statement of property furnished to an Assessor is binding on the corporation, and justifies the Assessor in adopting it as a correct statement of the property belonging to the company.

Record of Assessor's Official Action.—An Assessor is not required to keep a book containing the original list and assessment of each man's property, and if he does keep such book, entries in it are not a record of his official action, and may be changed by him.

Idem.—The "tax list or assessment-roll" which must be certified by the Assessor and delivered to the Clerk of the Board of Supervisors, is the only record of his final judgment, as to the value of property.

Tax for School Purposes.—A tax for school purposes must be based upon an assessment made by an Assessor elected by the qualified electors of the school district.

Appeal from the District Court, Fifth Judicial District, County of San Joaquin.

Suit to recover a tax for the year 1871, based on an assessment made to the defendant. The real estate was not served, so that the corporation was the only party defendant. The complaint followed the form prescribed by section 40 of the Revenue Act of 1861, alleging that the defendant "was the owner, and that there was duly assessed, and set down upon the assesment-roll," to the defendant, the real estate and other property particularly described. The property described in the complaint consisted of twenty-one and a half miles of railroad, extending from the city of Stockton, easterly, to the boundary line of the county of San Joaquin; lot 1, block 230, east, in the city of Stockton; lot 3, block 230, east, and the improvements thereon in the city of Stockton; N. half and E. 75 ft. of S. half of lot 13, block 230, east, and the improvements thereon, in the city of Stockton; E. half of lot 4, block 230, E. in the city of Stockton; all of lot 6, block 230 east, and the improvements thereon, in the city of Stockton; lot 8, block 230, east, and the improvements thereon in the city of Stockton; lot 10, block 230, east, in the city of Stockton; lot 12, block 230, east, and the improvements thereon, in the city of Stockton; S. half of W. 50 ft. of lot 14, block 230, east, in the city of stockton, and two other tracts of land in the city of Stockton, and the depot of the company on Weber Avenue. The State and county tax was $2,481 83. There were other

counts in the complaint to recover taxes levied by the Board of Supervisors' in the several school districts in which the defendant's property was situated, for the purpose of maintaining a free school in such district. The complaint alleged that these taxes were based on assessments made by the County Assessor. The answer denied that the defendant owned lots 1, 3, 4, 6, 8, 10, 12, the N. half, and E. 75 feet of the south half of lot 13, the E. half of lot 4, the S. half of the W. 50 ft. of lot 14, all in block No. 230, east of Centre Street, in the city of Stockton, in said county of San Joaquin, or the improvements on said lots, and the other tracts of land, except its track or road-bed across the same. The answer also contained the following:

"And this defendant further shows that on or about the 3d day of August, A. D. 1871, its superintendent, at the request of said County Assessor, furnished him, in writing, a description of said real estate, and improvements, last above described, giving therein the said road of said defendant, with said improvements thereon, at the value of $2,000 per mile, for the length of twenty-one and a half miles, amounting to the sum of $43,000, then, and ever since the fair assessable value thereof; that said Assessor then and there received said written statement as containing and giving the fair assessable value of said real estate and improvements, and so gave said defendant's said superintendent, to understand and believe, whereby said defendant was prevented from attending before the Board of Equalization of said county, in respect to the assessment of said real estate and improvements."

"Defendant avers according to its information and belief, that after the said Superintendent had left said written statement, with said Assessor, he, without the knowledge of said Superintendent, and without the knowledge of any of defendant's officers or employees, changed said written statement by altering the figures of $2,000 per mile, to $5,000 per mile, and the figures $43,000, to $107,500, and thereupon assessed said real estate and improvements at $5,000 per mile, and amounting to $107,500, in place of $43,000, its fair assessable value, and that by said acts of

said Assessor this defendant was prevented from knowing of said excessive assessment, and was prevented from appearing before said Board of Equalization, to reduce the said assessment, as it otherwise would have done, and that said acts of said Assessor, were and constitute a fraud in said assessment to the injury of this defendant."

On the trial, it was proved that the legal title to the following property, on the 15th day of February, 1871, was vested in J. P. Jackson:

Lot one, in block number two hundred and thirty, east of Center street, in said city. Lot three, in said block two hundred and thirty. Lots six, eight, ten and twelve, in said block two hundred and thirty. The west half, and the east seventy-five feet of south half of lot thirteen, in said block two hundred and thirty. The east half of lot four, in said block two hundred and thirty. And the south half of the west fifty feet of lot fourteen, in said block two hundred and thirty, and also the tracts of land mentioned above. W. J. L. Moulton was called as a witness by the defendant, and testified, that he was Superintendent of the defendant, in July, 1871, and as such, made his return to the Assessor of a list of the defendant's property. He said that he put values to the different parcels of property in the list, and placed a valuation on the railroad at $2,000 per mile, and that the Assessor said it was too low. He said that he knew that Jackson owned the lots when he made out the list, but as Jackson also owned pretty much all the stock in the railroad, he thought it made no difference. Moulton was asked by the District Attorney if he was authorized as Superintendent to give in a list of the defendant's property to the Assessor, and he answered that he thought he was. The attorney for the defendant objected to proof of Moulton's authority in that way, and argued that such proof could only be made by a resolution of the company authorizing Moulton to give in the list. He stated that the defendant did not recognize Moulton's act. The Court overruled the objection. The list of property given by Moulton to the Assessor was then shown to the witness, and identified by him as correct. The statement started out as follows:

"List of property belonging to the Stockton and Copperopolis Railroad Company this, the 25th day of July, 1871.

"The Stockton and Copperopolis Railroad Company makes the following statement of its property subject to taxation, in the county of San Joaquin, for the year A. D. 1871."

The statement then set forth a list in detail of the property described in the complaint. It was sworn to by Moulton as required by the Act.

C. H. Covell, the County Assessor, was then sworn on behalf of defendant, and a book was shown by him, which he testified was made by him, and that it contained the original list and assessment made by him against the defendant for the year 1871. The book was introduced in evidence. It contained the same list of property handed in by Moulton, and described in the complaint. The Assessor testified that the value of the railroad as entered originally in said book was $2,000 per mile, and that he had first listed and assessed it at that sum, but that he afterwards became satisfied that valuation was too small, and increased it to $5,000 per mile, and that the alteration was made before he had completed the assessment of property in the county, and prior to the 1st Monday in August, 1871. He further testified that the said original entries of values in said book were not intended to be, nor were at any time after the making thereof considered by him as final estimates of the values at which the said property should be assessed; and that the change of figures was made by him to represent the true and proper valuation, and was made before the preparation of the assessment-roll. The proof showed that the assessments in the different school districts were made by the County Assessor. The Court rendered judgment in favor of the plaintiff, and the defendant appealed.

The other facts are stated in the opinion.

*W. L. Dudley* and *J. H. Budd,* for the Appellant.

The County Assessor having once determined the value

of appellant's property, and listed and assessed the same at such value, had no authority to change such determination. He could not appeal to himself from his own decision. He is an officer of special and limited jurisdiction. He is to ascertain by inquiry and examination the property in his county, and then to determine the full cash value of such property, and list and assess the same to the owner, etc. (Statutes of 1867–8, page 674.*)*

After determining the value of the property, and listing and assessing it, as provided in section 13, of the Act of May 17th, 1861 (Statute of 1861, page 419), the Assessor is to prepare his assessment roll, alphabetically arranged. (See Sec. 20 of the same Act.)

An assessment could not be made of appellant's property in the several school districts for the levying of a tax for school district purposes by the County Assessor; such assessment could only be made constitutionally by an Assessor elected in each school district by the qualified electors thereof.

The statement made by W. J. L. Moulton, unless within the scope of his authority as superintendent, was not binding on the company. (*National Bank* v. *Norton,* 1 Hill, 572; 2 Crouch, 166; *Beatty* v. *Marine Insurance Company,* 2 Johns. 109.)

*E. S. Pillsbury,* District Attorney, and *J. B. Hall,* for the Respondent.

It is neither the right nor the privilege of a taxpayer to fix a valuation on the property contained in his statement. The assessment roll is the record of the final judgment of the Assessor, in respect to the value of the property as the basis for the levy, as well as the record of the ownership, and character of the property. (Revenue Act, 1861, Sec. 20; Hittell, Art. 6,169.)

The delinquent list is but a copy of that record, and being so, thereby becomes *prima facie* evidence of the truth of the facts which it sets forth. (Revenue Act, 1861, Secs. 34, 43.)

Until the Assessor has assessed and set down upon the

assessment-roll the property and the cash value thereof, he has made no determination as to the value which estops the exercise of his *quasi* judicial function in that regard.

There is no provision of law which either authorizes or requires the property owner or the Assessor to affix values and set them down "in the original lists of property."

The special tax was levied for the purpose of supplying a deficiency of State and County money required for the maintainance of the several public schools in the districts specially named, for eight months during the year.

The tax was levied under sections 98 and 99 of "An Act to amend an Act to provide for a system of common schools," approved April 4, 1870. (See Session Laws, 1869–70, pages 824, 851.)

A school district created under the Act of April 4, 1870, (*supra*), is not a "district" or "town" meant by Section 13, Article XI, State Constitution?

By the Court, NILES, J.:

It appears from the evidence that the legal title to a portion of the land assessed was never in the corporation, but was held by Jackson, who was a principal owner of the stock of the company. But it was averred by the defendant in its answer, and as one of the defenses upon which it especially relied, that its superintendent furnished to the Assessor a written statement of the real estate and improvements belonging to the company, and affixed to different items of the list certain valuations which were then accepted by the Assessor as the true valuations, but were afterward altered and increased by him without the knowledge of the superintendent, and this is claimed to constitute a fraud in the assessment to the injury of the defendant. It appears from the evidence that the list so furnished by the superintendent included, with other described property, the lots now claimed to have been owned by Jackson. We think the defendant should not be heard, against the admissions of the pleadings, to dispute the authority of its agent, and that the list given by him to the Assessor is binding upon the corporation, and justified the Assessor in adopting it as a correct statement of its property.

It is contended by the appellant that the assessment of the property for State and County taxes was invalidated by reason of the alteration made by the Assessor in the valuation of the property, appearing upon the book containing the original list and assessment. This position is not tenable. We are referred to no provision of the statute, and can discover none which requires the Assessor to keep a book of the kind described, or which makes an entry, and in it a record of his official actions. The "tax list or assessment-roll," provided for by section 20 of the Act (Stat. 1861, 424), and which must be certified by him and delivered to the Clerk of the Board of Supervisors, is the only record of his final judgment in respect to the valuation of property. It does not appear that the assessment in question was changed in any respect after its entry upon the assessment-roll.

The tax for school purposes was invalid, because not based upon assessments made by Assessors elected by the qualified electors of the several school districts, and the judgment must be modified in this respect. (*People* v. *White*, 47 Cal. 617; *People* v. *Sargent*, 44 Id. 432; *Williams* v. *Corcoran*, 46 Id. 555.)

Cause remanded, with directions to the Court below to modify the judgment by deducting the amount of taxes levied for school purposes, and a corresponding proportion of the percentage of the District Attorney.

Mr. Justice RHODES did not express an opinion.