[S. F. No. 2272. In Bank.—May 16, 1903.]

AARON C. ALLEN et al., Respondents, v. McKAY & Co. et al., Appellants.

TIDE-LANDS—ADVERSE POSSESSION—PERMISSIVE USE FOR STORAGE—PAYMENT OF TAXES.—A title by prescription cannot be acquired as against a patentee of tide-lands by a permissive use of the lands for storage of logs by mill-owners, under and in subordination to the legal title, nor by subsequent adverse possession, required by statute to be accompanied by the payment of all taxes assessed on the land, where there was a failure to pay such taxes for one year out of the five required to constitute the prescriptive right.

ID.—VALIDITY OF TAX ON TIDE-LANDS—DESCRIPTION IN PATENT AND ASSESSMENT—FRACTIONAL SUBDIVISIONS—PRESUMPTIONS—BURDEN OF PROOF.—An assessment of tide-lands by the fractional subdivision of a quarter-section, agreeing with the description in the patent, must be presumed to describe the whole of the fractional subdivision, in conformity with the survey of the public lands by the general government, and to include only the land patented.

The burden of proof is on the claimants of adverse possession, to show that the description was insufficient to identify the land.

ID.—DATE OF ASSESSMENT—LISTING OF PROPERTY—ASSESSMENT-ROLL—PAROL EVIDENCE.—The date of the listing of property by the taxpayer, and of the valuation of real property, sworn to by the owner before the assessor, cannot be taken as the date of the assessment. The sole and exclusive evidence of the date of the assessment of real property is the date when the assessment-roll was completed and certified by the assessor; and the parol evidence of the assessor is not admissible to show an earlier date of such assessment.

ID.—ADVERSE POSSESSION UNDER DEED—CONVEYANCE FROM COPARTNERS—REFUSAL OF INSTRUCTIONS.—Where a partnership was in possession of the property in dispute, in subordination to the legal title, a conveyance by the other partners to one of their number, describing such property, though it might indicate an intention to begin the building of an adverse claim, did not change the character of the possession of the grantee to that of a party entering under a claim of title founded upon a written instrument. The deed only had the effect to make the grantee the owner of the whole of the partnership property. Instructions based upon the theory that the character of the possession was changed thereby were properly refused.

ID.—EVIDENCE—CUSTOMARY USE OF BOOMS WITH MILLS.—Where there was no question that the tide-land in dispute was used with the mill of defendants and their successors in such a way that if they were the owners of such land, or had acquired title thereto by adverse possession, it would have been appurtenant to the mill, it was not error to exclude evidence that mills are usually conducted with booms, and that their use is customary.

ID.—ERRORS NOT PREJUDICIAL.—Errors which appear from the record not to have been prejudicial to the appellants are not ground of reversal.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. G. W. Hunter, Judge.

The facts are stated in the opinion of the court, and in the opinion rendered on the former appeal (120 Cal. 332).

Mastick, Belcher & Mastick, and W. B. Treadwell, for Appellants.

The assessment for 1889 did not refer to the patent for description, and was void for uncertainty. An assessment which does not sufficiently describe the property is not one

which the adverse possessor is bound to pay. (*Harvey* v. *Meyer,* 117 Cal. 60.) A sufficient description must appear from the assessment, else it is fatally defective. (*People* v. *Mahoney,* 55 Cal. 286; *Ronkendorf* v. *Taylor's Lessee,* 4 Pet. 350, 362.) The user of the tide-lands in controversy with booms, under a claim of adverse right, constituted a disseisin. (*Tufts* v. *Charlestown,* 117 Mass. 401; *Stetson* v. *Veazie,* 11 Me. 408.) The deed to Mrs. McKay purported to convey to her the entire land in severalty, which deed was placed on record, and her exclusive occupation of the whole of the land in dispute under such deeds, without any recognition of title in any one else, was adverse. (*Unger* v. *Mooney,* 63 Cal. 586, 596;[1] *Feliz* v. *Feliz,* 105 Cal. 1, 5; *Franz* v. *Feliz,* 131 Cal. 205; *Andrus* v. *Smith,* 133 Cal. 78, 82.)

S. M. Buck, and J. F. Coonan, for Respondents.

Permissive occupation by McKay & Co., and their declaration showing it, were binding on Mrs. McKay, and there could be no adverse possession inaugurated merely by their deed to her. (Code Civ. Proc., sec. 321; *Central Pacific R. R. Co.* v. *Mead,* 63 Cal. 112; *Williams* v. *Harter,* 121 Cal. 52; *Vrooman* v. *King,* 36 N. Y. 483; *Luce* v. *Carley,* 24 Wend. 454.[2]) A description of property assessed is sufficient if the property assessed can be identified. (Pol. Code, secs. 3650, 3884, 3885; *Woodside* v. *Wilson,* 32 Pa. St. 52-55; *Lar* v. *People,* 80 Ill. 268; *Sloan* v. *Sewell,* 81 Iowa, 182; *Oldtown* v. *Blake,* 74 Me. 280.) The assessment-roll was the final and only valid evidence of assessment of real property. (*People* v. *San Francisco Savings Union,* 31 Cal. 133, 138, 139; *People* v. *Hastings,* 34 Cal. 571; *People* v. *Stockton etc. R. R. Co.,* 49 Cal. 415-421; *Emeric* v. *Alvarado,* 90 Cal. 466, 467; *Mygatt* v. *Washburn,* 15 N. Y. 320; *People* v. *Suffern,* 68 N. Y. 326.)

Knight & Heggerty, and George C. Sargent, for Respondents.

The description under which appellants had the land assessed to them was absolutely void for uncertainty, under appellants' citation. (*Harvey* v. *Mayer,* 117 Cal. 60; *People* v. *Mahoney,* 55 Cal. 286.) In 1893 delinquent city taxes were

[1] 49 Am. Rep. 100.          [2] 35 Am. Dec. 637.

paid by both parties, but were first paid by the Allens. The payment by the legal owner was upon every part. (*Coonradt v. Hill,* 79 Cal. 587-591.) The judgment presumes priority of payment by the successful party. (*Cavanaugh* v. *Jackson,* 99 Cal. 672.) The title of the true owner who paid the taxes first must prevail. (*Carpenter* v. *Lewis,* 119 Cal. 18.)

ANGELLOTTI, J.—Plaintiffs recovered judgment in the court below for the possession of certain land in Humboldt County, and two thousand dollars damages for the withholding of the same, and defendants appeal from such judgment and from an order denying their motion for a new trial. The land was state tide-land, and as such was conveyed by the state of California to one Charles E. Collins, by patent dated August 29, 1861, and the plaintiffs have, by mesne conveyances, acquired the record title thereto. The defendants rely entirely upon title by prescription or adverse possession, pleading section 318 of the Code of Civil Procedure in bar of the action. This action was commenced April 30, 1894, and was before this court on a former appeal from a judgment in favor of plaintiffs, when, for certain errors in the matter of instructions to the jury, the judgment and order were reversed and the cause remanded for a new trial. (*Allen* v. *McKay,* 120 Cal. 332.)

The defendants claim to have acquired all the rights of the firm of Evans & Co., which firm it appears, became the owner of a tract of land adjoining the premises in controversy in the year 1871. Upon such adjoining tract of land was a sawmill, and the property was known as the Occidental Mill property. This firm and its successors in interest continued to own this property and conduct the business of operating a sawmill thereon down to September 12, 1888, when the entire title vested in Rebecca McKay. The various deeds of conveyance prior to September, 1888, transferred the Occidental Mill property and its "appurtenances." On September 12, 1888, said Rebecca McKay, being already the owner of an interest in the partnership property of McKay & Co., the successor, through mesne conveyances of Evans & Co., under a decree of distribution in the matter of her deceased husband's estate, received a conveyance from the other copartners,

CXXXIX. Cal.—7

Alexander Connick and John A. Sinclair, of all their interest in the partnership and its property, and in this conveyance it was for the first time attempted to specifically include the property in controversy, describing it as a tract of land known as McKay & Co's. lower mill boom. From 1871 to the commencement of this action, the various owners of the mill property, in connection with the mill, used the property in controversy as a storage-place for sawlogs, and the same was inclosed by piles driven into the ground, to which were attached by chains continuous series of heavy timbers called boom-sticks. Upon the land side the inclosure was completed by pickets driven into the soil.

The defendants are the successors in interest of said Rebecca McKay.

As was said in the former opinion, it being conceded that defendants paid no taxes upon this property between May 31, 1878, the date at which the statute requiring the adverse claimant to pay all taxes levied and assessed took effect, and the year 1890, defendants' title was created, if at all, between 1871 and May 31, 1878, or during the five years preceding the commencement of this action.

As to the period between 1871 and May 31, 1878, there is no serious contention on the part of appellants. The finding of the jury as to that branch of the case is amply supported by the evidence, which clearly indicates that the use of this property for the storage of logs by the Occidental Mill people was under and in subordination to the legal title, and that no claim of right to so use it was ever intimated, but that, on the contrary, one of the owners expressly disavowed any such claim. Learned counsel for appellants refrain from discussing this branch of the case, and confine their attention, as to the evidence, to the five years next preceding the commencement of the action,—viz., April 13, 1889, to April 30, 1894. As to this period, it is conceded that defendants' predecessors paid no state and county taxes levied during the year 1889, and, further, that it was incumbent upon them, in order to create a title by adverse possession during that period, to prove the payment of all such taxes as were *assessed and levied* subsequent to April 30, 1889. But it is contended,—1. That no tax whatever was assessed on this land during the year 1889, the claim in this connection being, that the attempted assessment

to plaintiff's predecessors was void, for the reason that there was no sufficient description of the property assessed; and 2. That if any assessment was made, it was made *prior* to April 30, 1889.

In our judgment, the assessment of 1889 was not void. All of the land included in the state patent to Collins, one hundred and four and ninety-nine one-hundredths acres, stated in the patent to be "Survey No. 8, State Tide Land, Humboldt Co.," was embraced in the assessment. There was no description by metes and bounds, but the description was by fractional sections, as the same were stated in the patent, the particular portion of the assessment applicable to the land in controversy being as follows,—viz.: "S. Frc. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ Sec. 22, 5 N. 1 W."

Under section 3650 of the Political Code, land may be described on the assessment-roll by township, range, section, or fractional section, whenever by reason of divisions and subdivisions provided by acts of congress it is possible to so describe the land as to identify it, regardless of whether the land was public land of the United States or of the state. The question always is as to whether the land is sufficiently identified by the description. The lands in question were tide-lands, the survey of which, presumably, had been made to conform to the surveys of the public lands by the general government. It does not appear that all that portion of the land patented by the state contained in the south half of the northwest quarter of section 22 is not sufficiently identified by this description; for, with the exception of that portion of said south half that is a part of Humboldt Bay, there is nothing left to fall within the description, according to the diagram contained in appellants' brief, except certain land situated within the corporate limits of the city of Eureka, which, so far as appears, was never state land, but divided into and mapped as city and town lots. Appellants' own diagram and the map attached to the transcript would seem to indicate that such was the case. The description is to be read as including the whole of the fractional south half of the northwest quarter, and so read it does not affirmatively appear that it could include anything but the land patented to plaintiffs' predecessors. The burden of proof is on the parties claiming by adverse possession to show the insufficiency of this description to identify the land; for upon

its face it is not insufficient, and this, we are satisfied, they have not done. Nor, in our judgment, does it appear that the assessment for the year 1889 was made prior to April 30th of that year. One of several reasons for the reversal of the judgment in plaintiff's favor on the former appeal was, that the trial court had refused to give an instruction to the effect that it was not necessary for defendant to prove the payment of taxes assessed *prior* to April 30, 1889, and in discussing this question this court said substantially that the question whether the property was assessed prior or subsequent to April 30, 1889, was a question of fact essentially for the jury and not the trial judge. But upon that appeal the court expressly declined to decide what would constitute the assessment of any particular tract of land by the assessor within the purview of the statute, and, although the only evidence in that record as to the time of the assessment was the uncontradicted statement of the assessor that the assessment in question was made upon March 7, 1889, expressly declined to determine the particular day upon which the land was assessed, or to give any intimation regarding the same. Under these circumstances, it is clear that, so far as the law of the case is concerned, this court has not held that the assessment of a tract of land can be shown by the parol statement of the assessor. It will be observed that under the law (Pol. Code, sec. 3652) the assessor may complete his assessment-book *prior* to the first Monday in July, the language of the section being "on *or before* the first Monday in July," etc., and we know of no reason why it may not be completed prior to the thirtieth day of April; and if this be so, the opinion of the court on the former appeal certainly cannot be construed as laying down the doctrine that the assessment-roll is not the only evidence of the acts of the assessor relative to the assessments of real property by him. It must be borne in mind that the court on the former appeal was simply considering the question as to the correctness of a requested instruction, and that the assessment-roll itself was not in the record on appeal. There was, as said before, no evidence in the record material to this point other than the uncontradicted parol testimony of the assessor.

It has been held by this court that the assessment-roll, when completed and certified by the assessor to the board of super-

visors, is the only evidence of his acts and intentions. (*People*
v. *Savings Union,* 31 Cal. 132 (138) ; *People* v. *Stockton etc.
R. R. Co.,* 49 Cal. 414-421.) In the latter case this court
said : "The tax-list or assessment-roll . . . which must be
certified by him and delivered to the clerk of the board of
supervisors, is *the only record of his final judgment in respect
to the valuation of property."* And it must necessarily be so
when we remember that he has no other official record of assess-
ments, and that until he completes his roll and certifies it to the
proper officer the valuations of property are entirely within
his control. It certainly cannot be that such an act as the
assessment of real property can be established in an action of
this character by parol proof or by anything other than an
official record, and there is, in our judgment, nothing in the
opinion on the former appeal that requires us to hold that
such is the law of this case.

On this appeal it appears from the record that when the
assessor certified that he made the assessment on the 7th of
March, he referred to the time when the Allens made the
statement of property owned by them. He said : "I made the
assessment against C. and C. F. Allen for 1889 on the 7th of
March of that year. *This document is the assessment,"* and
the document referred to was then read in evidence. It was
the ordinary taxpayer's statement of property, and nothing
else, sworn to before the assessor on March 7, 1889, and con-
stituted no assessment. The valuation therein stated was not
a record of the assessor's act, for there is no provision of law
making such an entry a record of his official action. (*People*
v. *Stockton etc. R. R. Co.,* 49 Cal. 414.) The record does
affirmatively show, on this appeal, that the assessment-roll
for the year 1889 was completed and certified on the first day
of July, the assessment-roll itself being introduced in evidence
for that purpose, and this, we think, constitutes the sole and
conclusive evidence as to the date of the assessment for the
year 1889. It further appeared, although we are not disposed
to regard it as material, that the assessment-roll of Eureka
Township was not commenced until the first part of May or
the latter part of April.

There are several alleged errors as to instructions, but after
a full consideration of the charge of the court we have con-

cluded that the jury was fairly instructed upon every material
point, and that there was no prejudicial error. Such portions
of sections 322 and 323 of the Code of Civil Procedure as
would have been at all applicable under the evidence, if Mrs.
McKay had entered under claim of title, founding such claim
upon a written instrument, were covered by other instructions.
But we are unable to see that the nature of Mrs. McKay's pos-
session was at all changed by the deed from her copartners,
Connick and Sinclair. At the date of that deed, she was al-
ready in possession, in common with such partners, and the
deed from them was plainly simply a conveyance of their in-
terests in the partnership property. There is no pretense that
either Connick or Sinclair ever claimed any interest in the
property in controversy beyond such interest as they might
have as members of such partnership. The insertion of an at-
tempted description of the property in controversy indicates
perhaps an intention to begin the building of an adverse title,
but nothing more, and under the evidence in this case there is
nothing to support the contention that the character of her
possession was at all changed by the deed. She became, by
virtue of such deed, the owner of the whole of the partnership
property, and the deed had no other effect. Hence, all instruc-
tions constructed upon the theory that, by reason of the deed,
the character of her possession had changed, and that she had
by virtue thereof acquired a title different from, and inde-
pendent of, any rights that the partnership had, were properly
refused. Taking into consideration the further fact, estab-
lished by uncontroverted evidence, that the taxes for the year
1889 were assessed and levied within the five-year period, and
were not paid by the adverse claimant, it is clear that if any
error was committed in the instructions as to adverse pos-
session, such error must be considered immaterial.

With reference to the claim of easement, the instructions,
as a whole, were correct, and there was evidence to support
the verdict of the jury.

The lower court did not err in refusing to permit the de-
fendants to prove by the witness Way that mills are usually
conducted with booms, and that their use is customary. There
was no question as to the fact that the land in dispute was
used with the mill in such a way that, assuming it to have

been owned by the owners of the mill, or in their adverse possession, it would have been appurtenant thereto. The remarks of counsel for plaintiffs as to a map, complained of by appellants, were improper, but not prejudicially so, and the court instructed the jury to disregard them. Conceding that certain testimony of the witness Carr, as to the assessment of property, should have been stricken out as not responsive to the question asked him, it is clear from the evidence in the record that the ruling could not have been injurious to appellants.

The judgment and order are affirmed.

Van Dyke, J., McFarland., J., Shaw, J., and Lorigan, J., concurred.

Rehearing denied.