[No. 53. First Appellate District.—September 15, 1905.]

## GEORGE H. HOUGHTON, and OLIVE M. HOUGHTON, Respondents, v. MARKET-STREET RAILWAY COMPANY, and SAN FRANCISCO AND PACIFIC GLASS WORKS, Appellants.

NEGLIGENCE—COLLISION OF STREET-RAILWAY CAR WITH TRUCK—INJURY TO PASSENGER—PRESUMPTION.—In an action against a street-railway company and another company owning a truck, for alleged negligence of each in causing a collision by which plaintiff, a passenger on the street-car, was injured, there is a presumption of negligence against the defendant railway company from the fact of the collision.

ID.—ORDER GRANTING NEW TRIAL—CONFLICTING EVIDENCE AS TO NEGLIGENCE.—Where the defendants had a verdict, and a new trial was granted for insufficiency of the evidence to sustain the verdict, the order will not be disturbed upon appeal where the evidence was conflicting as to whether or not the injury was due to the negligence of both defendants, and there was sufficient evidence to have sustained a verdict for plaintiff, if the jury had so found.

ID.—REVIEW OF GROUNDS FOR ORDER—DENIAL OF CHALLENGE OF JURORS FOR CAUSE—DISQUALIFICATION.—This court is not limited to the particular ground on which the court below granted a new trial, but may review the case and sustain the order on any ground assigned. Where one of the grounds assigned was error in denying plaintiffs' challenge for cause interposed to jurors, and it appears that they were disqualified as not having been on the last assessment-roll, the error in denying the challenge is ground for supporting the order.

ID.—"LAST ASSESSMENT-ROLL"—COMPLETED ROLL.—The "last assess-
ment-roll," within the meaning of the statute, is the last one
completed. The assessment-roll is not completed until certified by
the assessor and delivered to the clerk of the board of supervisors.
The fact that the jurors challenged had paid to the assessor taxes
on personal property assessed for the current year, the assessment-
roll including which was not completed at the time of the trial, is
immaterial, where their names do not appear upon the last com-
pleted· roll for the previous year.

APPEAL from an order of the Superior Court of the
City and County of San Francisco granting a new trial.
John Hunt, Judge.

The facts are stated in the opinion of the court.

A. A. Moore, and Stanley Moore, for Market-Street Rail-
way Company, Appellant.

M. S. Eisner, for San Francisco and Pacific Glass Works,
Appellant.

Sullivan & Sullivan, for Respondents.

CHIPMAN, J.—The plaintiffs, husband and wife, brought
this action to recover damages for personal injuries, sus-
tained by the wife through the alleged joint negligence of the
defendants, while she was riding as a passenger on defend-
ant railway company's car. The trial was before a jury and
defendants had the verdict. Plaintiffs moved for a new trial
upon several grounds, of which the following are urged: 1.
Insufficiency of the evidence to sustain the verdict; 2. Error
in denying plaintiffs' challenge for cause interposed to jurors;
and 3. Newly discovered evidence.

The court granted plaintiffs' motion on the ground of in-
sufficiency of the evidence to sustain the verdict. Defendants
appeal and contend that the court abused its discretion in
granting the motion.

1. It is well settled that the appellate court is not limited
to the ground on which the trial court has based its order,
but may review the case and sustain the order upon any other
assigned ground. (*Churchill* v. *Flournoy*, 127 Cal. 362, [59
Pac. 791].) The rule is, as conceded by appellants, that this
court will not disturb the action of the trial court in grant-

ing a motion for a new trial, unless the evidence is free from substantial conflict and the record shows that the trial court abused its discretion in making the order. Appellants rightly state the question to be whether or not the evidence, viewed in the light most favorable to the plaintiffs, would have justified a verdict against the defendants.

2. Appellants, however, contend for a rule which we think is not sustained by authority or reason,—namely, that no presumption of negligence arose against either defendant; citing *Harrison* v. *Sutter-Street Railway Co.*, 134 Cal. 549, [66 Pac. 787]. That case went no further than to decide that no presumption of negligence arose against *both* defendants, it appearing that the injury occurred to a passenger on the railway company's car in a collision with the defendant brewing company's wagon. That a presumption of negligence arose as against the defendant railway company in the present case, see *Osgood* v. *Los Angeles Traction Co.*, 137 Cal. 280, [92 Am. St. Rep. 171, 70 Pac. 169]. See, also, *Sullivan* v. *Market-Street Ry. Co.*, 136 Cal. 479, [69 Pac. 143].

3. Plaintiff Mrs. Houghton in the afternoon of August 21, 1900, was a passenger on defendant railway company's car which was running along Haight Street easterly in the city of San Francisco; she occupied a seat near the first stanchion on the southerly or right-hand side of the dummy or open portion of the car; between her and the front of the car on her left was another passenger, and on her right were passengers sitting on the same seat; the car stopped on the east side of Webster Street, and while there defendant Pacific Glass Works' truck, drawn by two horses, passed the car on its southerly side, going in the same direction; the car started forward and shortly attained its ordinary speed of eight miles an hour, overtook the Glass Works' truck, and, without slackening its speed, passed the hub of the hind wheel safely, but the front stanchion collided with the hub of the front wheel of the truck and caught Mrs. Houghton's foot between the stanchion and wheel, thus causing the injury complained of; the collision occurred between Webster and Buchanan streets, and about one hundred or one hundred and twenty-five feet from Webster Street. Defendants' theory of the case is, that

the injury was the result of inevitable accident; that the truck was moving along parallel with the track at a safe distance from it; that the driver of the truck looked back and saw the car coming, and hence it was immaterial whether the gripman rang the bell or not; that as the car came alongside of the truck the horses gave a sudden lurch to the left, towards the car, and thus brought the hub of the front wheel in collision with the car stanchion and caused the injury; that the driver was in perfect control of the team, but its movement to the left was so sudden and unexpected that he could not check it in time to avoid the accident. There was some evidence tending to establish this theory. This evidence, however, was in conflict with evidence tending to establish an entirely different explanation of the accident, an explanation which, we think, would have warranted the inference by the jury that the accident was the result of the negligence of both defendants.

The width of the truck between the outer edges of the front wheels was six feet four and one quarter inches, and the distance between the outer edge of the southerly track rail and the Haight-Street curb was eleven feet four and one half inches. The lower step of the car extended nineteen inches beyond the rail in a southerly direction; from the outer edge of the seat on which Mrs. Houghton sat to the outer edge of the stanchion the distance was ten inches, and fastened to the stanchion was a grab-rail projecting three and one half inches further. The clear distance from the stanchion to the curb was ten feet two and one quarter inches. The width of the truck at the edge of the front wheels being six feet four and one quarter inches, left the driver three feet eight inches clear space between where Mrs. Houghton's feet were resting and the truck, if he had availed himself of it. Mrs. Houghton testified: ''I saw the hind wheel of the truck first. The hind wheel of the truck came very close to the lower edge of the lower platform of the car; it almost touched. I remember that it almost touched my foot. After passing the rear wheel of the truck my foot was caught in the front, between the stanchion and the front wheel. I don't remember much that happened after that.'' There was evidence that the gripman did not slacken his speed until he had passed the hind wheel of the truck, and, as some of the witnesses testified, almost simultaneously with the collision. There was

evidence also that the gripman did not ring his bell until about the instant of the collision. With a clear view of the truck and its proximity to the track it was a question of fact whether the gripman was guilty of negligence in running his car at full speed alongside of this truck, and also whether he did so without warning to its driver. We think there was unmistakably a conflict in the evidence as to whether the railway company was guilty of negligence. The driver of the truck knew that the car was behind and must soon overtake him, for he had just passed it going in the same direction; as to whether he looked back and saw the car coming the evidence was in conflict. If the gripman had sounded a timely warning the truck-driver might have pulled away from the approaching car, but it was a question in the case whether, knowing that the car would soon be up with him, he was guilty of negligence in driving so close to the track when there was ample room to have avoided doing so. Furthermore, there was evidence admitted as against the Glass Works defendant tending to show that the driver of the truck turned his horses as if to cross the track to pass a laundry wagon that was standing ahead of him and on the same side of the street.

The theory of inevitable accident rested principally on the testimony of the driver of the truck, who testified as to the lurching of his horses towards the car. As against the Glass Works defendant a witness testified to admissions made by the truck-driver which were inconsistent with the truth of his statement that the collision was caused by the sudden movement of his team towards the car which he could not control.

Without noticing the evidence further, we think it was not without substantial conflict on the question of negligence as to both defendants and that there was sufficient evidence to have sustained a verdict for plaintiffs had the jury so found.

4. The trial occurred in May, 1901. Two of the jurors, as appeared from examination upon their *voir dire,* were not on the assessment-roll for 1900, but had paid personal property tax on property which they owned on the first Monday of March, 1901. Both jurors were challenged for cause by plaintiffs on the ground that they were not on the last assessment-roll. The court overruled the challenges and plaintiffs ex-

cepted. It appeared that plaintiffs were obliged to and did exercise all the peremptory challenges allowed them by law. If the challenges interposed to these two jurors had been allowed, other jurors who sat upon the jury might have been peremptorily challenged by plaintiffs. (*Lombardi* v. *California-Street R. R. Co.*, 124 Cal. 311, [57 Pac. 66].)

Section 198 of the Code of Civil Procedure provides: "A person is competent to act as juror if he be: . . . 4. Assessed on the last assessment-roll of the county, or city and county, on property belonging to him." Section 199 of the Code of Civil Procedure provides: "A person is not competent to act as a juror: 1. Who does not possess the qualifications prescribed by the preceding section"; and a proposed juror lacking the prescribed qualifications may be challenged. (Code Civ. Proc., sec. 602.) The question then is: Were these jurors on the last assessment-roll within the meaning of the statute? Property in possession or under control of a person on the first Monday in March at twelve o'clock noon is subject to assessment. (Pol. Code, sec. 3629.) The assessor must complete his assessment-book "on or before the first Monday in July." (Pol. Code, sec. 3652.) Under this section the assessor may complete the assessment-roll before the first Monday in July of each year; but it is not claimed that he had done so in this instance; on the contrary, we understand the fact to be that the assessment-roll was not completed. All that had happened, so far as concerned these jurors, was that the assessor had collected from them tax on personal property that might appear on the assessment-roll for the year 1901, when completed. As the trial took place in May, 1901, the last assessment-roll which was then in existence was that for the year 1900. This view would seem to be confirmed by an examination of sections 204 and 205 of the Code of Civil Procedure. It is there provided that jurors shall be selected in the month of January of each year, and shall serve during the ensuing year, and that persons thus selected shall be those "who are assessed on the last preceding assessment-roll of such county or city and county." In January, 1901, the only assessment-roll in existence was that for the year 1900, and the challenged jurors were not on that roll, nor was property at that time assessable for the year 1901. Reading all these sections together,

as may be done, we think the assessment-roll contemplated by the statute was that for the year 1900.

If the assessment-roll for any given year has been completed and a juror is found to be on that roll as a taxpayer when called to sit in a case he might with some reason be said to be on the last assessment-roll. Upon the point, however, we express no opinion, as such a case is not before us. But here there was no last assessment-roll, and no completed roll at all except that for the year 1900. How can we say, as is contended by appellants, that the assessment-roll for 1901 was in contemplation of law completed when we know the fact to be that it was not then completed? It was held in *Allen* v. *McKay*, 139 Cal. 94, [72 Pac. 713], that the tax-list or assessment-roll, which must be certified by the assessor and delivered to the clerk of the board of supervisors, is the only record of his final judgment in respect to the valuation of property. He has no other official record of assessments, and until this record is finally made up, completed, and certified as required by the statute (Pol. Code, sec. 3652), it is entirely within the assessor's control, and may be altered or changed to conform to the facts; until then it cannot be said that the last assessment-roll mentioned in the statute is in existence.

The right of trial by jury is a constitutional right given to litigants in which the persons called to the jury-box have no concern and in which no right of theirs is involved. While the right of trial by jury, as contemplated in the constitution, may not be taken away by the legislature, it is within its power to prescribe the qualifications of jurors. Litigants are entitled to have remain in the jury-box such persons only, if due and timely objection be made, as the statute declares are qualified to sit as jurors. The challenge was for good cause (*People* v. *Thompson,* 34 Cal. 671; code provisions, *supra*); and plaintiffs could rely upon the error in denying their challenge. (*Lombardi* v. *California-Street R. R. Co.,* 124 Cal. 311, [57 Pac. 66].)

The order is affirmed.

Harrison, P. J., and Cooper, J., concurred.