(November 30, 1905.)

# INLAND LUMBER AND TIMBER COMPANY v. THOMP-
# SON.

[83 Pac. 933.]

ASSESSMENT FOR TAXATION—LIST OF PROPERTY FURNISHED BY TAX-
PAYER—ESTOPPEL—ADDITIONAL ASSESSMENTS—ACTION OF BOARD OF
EQUALIZATION—NOTICE.

1. Where a taxpayer has furnished the assessor with a state-
ment of his property, and the assessor, relying thereon, has assessed
the property therein described against the person furnishing the
list, such person will thereafter be estopped from denying the
ownership of the property in an action to enjoin the collection of
the tax.

2. Under revenue act of 1901 (Sess. Laws 1901, p. 233) it is made
the duty of the board of equalization to order the assessor to assess
any property which has escaped assessment, and where such assess-
ment is made before the final adjournment of the session of the
board convened on the fourth Monday in July, the taxpayer has
his opportunity of being heard, and such assessment is not void
for want of notice or opportunity to be heard in relation thereto.

3. The statutes (Act 1901, pp. 250, 254, secs. 53, 65) and pub-
lished notice by the clerk of the board of commissioners (sec. 92)
constitute notice to the taxpayer of the meeting of the board of
equalization and of his right to appear at either or both of such
meetings and protest against any assessment or action of the board
in relation to assessments.

(Syllabus by the court.)

APPEAL from the District Court in and for Kootenai
County. Honorable Ralph T. Morgan, Judge.

Action by plaintiff to have canceled an assessment
against certain property and to enjoin the collection of a
tax assessed thereon. Judgment for defendant and plain-
tiff appealed. Affirmed.

The facts are stated in the opinion.

Hamblin, Lund & Gilbert, for Appellant.

No part of the public domain is taxable by the state, and
land is not severed from the public domain until at least

the equitable title has passed to the individual and his right to a patent is complete.  ·(*Kansas etc. Ry. Co. v. Prescott,* 16 Wall. 603, 21 L. ed. 373; *Union Pac. Ry. Co. v. McShane,* 22 Wall. 444, 22 L. ed. 747; *Hussman v. Durham,* 165 U. S. 144, 17 Sup. Ct. Rep. 253, 41 L. ed. 664; Cooley on Taxation, 3d ed., 135; 27 Am. & Eng. Ency. of Law, 2d ed., 644, subd. "C," and notes 3 and 4, with numerous cases cited; Rose's Notes on U. S. Supreme Court Reports, 133, U. S. 496-514; Rose's Notes on U. S. Supreme Court Reports, 16 Wall. 603-610.)   Adopting as settled law, then, the proposition that the public domain is not taxable until the equitable title is fully vested in the individual, we reach the real question in this branch of the case, viz.: When does the equitable title pass under a forest reserve lieu selection?   In this connection we ask the court to examine the act of Congress authorizing these lieu selections.   (Act of June 4, 1897, U. S. Comp. Stats. 3768, Rules 16 and 18.   See 24 L. D. 589-592; *Cosmos Expl. Co. v. Gray Eagle Oil Co.,* 190 U. S. 302, 23 Sup. Ct. Rep. 692, 24 Sup. Ct. Rep. 860, 47 L. ed. 1064; *Wisconsin Central Ry. Co. v. Price County,* 133 U. S. 496, 10 Sup. Ct. Rep. 341, 33 L. ed. 687.)   The decisions are uniform to the effect that the owner of land is not estopped from questioning an assessment where he has handed in a list, as in this case, where such assessment is absolutely void. (See *Charleston v. Middlesex,* 109 Mass. 270; *State v. Burrough,* 174 Mo. 700, 74 S. W. 610; *Chicago etc. Ry. Co. v. Cass Co.,* 51 Neb. 369, 70 N. W. 955; *Centennial Eureka M. Co. v. Juab Co.,* 22 Utah, 395, 62 Pac. 1024; *State v. Bellew,* 86 Wis. 189, 56 N. W. 782; *State v. Baker,* 129 Mo. 482, 31 S. W. 924.)   The effect of the assessment of appellant's lands without notice to the company, and at such a time as to preclude all opportunity to contest such assessment before the board of equalization is sufficient to render it illegal.   (Cooley on Taxation, 3d ed., p. 624; *Hagar v. Reclamation Dist.,* 111 U. S. 701, 4 Sup. Ct. Rep. 663, 28 L. ed. 569; *Paulsen v. Portland,* 149 U. S. 30, 13 Sup. Ct. Rep. 750, 37 L. ed. 637; *Winona etc. L. Co. v. Minnesota,* 159 U. S. 526, 16 Sup. Ct. Rep. 83, 40 L. ed. 247; *Bellingham Bay Co.*

*v. New Whatcom*, 172 U. S. 315, 19 Sup. Ct. Rep. 205, 43 L. ed. 460; *Stuart v. Palmer*, 74 N. Y. 183, 30 Am. Rep. 289; *County of San Mateo v. Southern Pac. Ry. Co.*, 13 Fed. 722; *County of Santa Clara v. Southern Pac. Ry. Co.*, 18 Fed. 385; *Hutson v. Woodbridge etc. Dist.*, 79 Cal. 90, 16 Pac. 549, 21 Pac. 435; *Kuntz v. Sumpton*, 117 Ind. 1, 19 N. E. 474, 2 L. R. A. 655; *McEneney v. Sullivan*, 125 Ind. 407, 25 N. E. 540; *Ferry v. Campbell*, 110 Iowa, 290, 81 N. W. 604, 50 L. R. A. 92.) This applies to subsequent assessments. (*Winona etc. L. Co. v. Minnesota*, 159 U. S. 526, 16 Sup. Ct. Rep. 83, 40 L. ed. 247; *People v. Pittsburg Ry. Co.*, 67 Cal. 625, 8 Pac. 381.)

Ezra R. Whitla, for Respondent.

The question which this court has to decide in this case is: "Can a person furnish a list of property for taxation, and afterward come in and enjoin the collection of the tax on the same, without showing some equitable grounds for their action?" (*People v. Stockton etc. R. R. Co.*, 49 Cal. 414; *San Francisco v. Flood*, 64 Cal. 504, 2 Pac. 264; Am. & Eng. Ency. of Law, 2d ed., p. 671; *In re Bank of Marion*, 153 Ill. 516, 39 N. E. 118.) It is not even necessary that the statemen furnished by the taxpayer to the assessor should be verified. If he furnishes it for the purpose of assessment he is estopped just the same as if he had furnished a verified statement. (*State v. Cooper*, 59 Wis. 666, 18 N. W. 438; *Phelps Mtg. Co. v. Board of Equalization*, 84 Iowa, 610, 51 N. W. 50; *Lake Co. v. Sulphur Bank etc. Min. Co.*, 68 Cal. 14, 8 Pac. 593; *People v. Atkinson*, 103 Ill. 45; *Republic Life Ins. Co. v. Pollak*, 75 Ill. 292; *American Union Exp. Co. v. St. Joseph*, 66 Mo. 675, 27 Am. Rep. 382; *Hubbard v. Windsor,* 15 Mich. 146.) A party asking for relief from an improper assessment in view of taxation must show equity in his behalf and not attempt to evade just taxation. (*Steele v. Dunham*, 26 Wis. 393.) The appellant corporation contends that the state has no right to tax its property as property which has escaped taxation. We cite the following authorities to sustain the respondent's

position in this contention: 27 Am. & Eng. Ency. of Law, 2d ed., 698. The county had the right to assess property originally omitted from the tax-roll. (*Oregon etc. R. Co. v. Lane Co.,* 23 Or. 386, 31 Pac. 964; *Ramp v. Marion Co.,* 24 Or. 461, 33 Pac. 681; *Kirkwood v. Ford,* 34 Or. 552, 56 Pac. 411; *Albany Mut. Bldg. Assn. v. City of Laramie,* 10 Wyo. 54, 65 Pac. 1011; *Aggers v. People,* 20 Colo. 348, 38 Pac. 386; *United States Trust Co. v. Territory,* 10 N. Mex. 416, 62 Pac. 987; *Sellers v. Barrett,* 185 Ill. 466, 57 N. E. 422; *People v. Sellars,* 179 Ill. 170, 53 N. E. 545; *Crowder v. Riggs,* 153 Ind. 158, 53 N. E. 1019; *Reynolds v. Bowen,* 138 Ind. 434, 36 N. E. 756, 37 N. E. 962; *City of Delphi v. Bowen,* 138 Ind. 235, 36 N. E. 761; *Louisville Water Co. v. Commonwealth,* 18 Ky. Law Rep. 2, 34 S. W. 1064; *State Tax Commrs. v. Assessors,* 124 Mich. 491, 83 N. W. 209; *Eldhorn Land etc. v. Dixon Co.,* 35 Neb. 426, 53 N. W. 382; *Kink v. Parker,* 73 Iowa, 757, 34 N. W. 451; *Cedar Rapids etc. Ry. Co. v. Carroll Co.,* 41 Iowa, 153.) Now the appellant further contends that notice must be given before property can be taxed. My answer to that question is, that where, as in this case, the property had never been given into the assessor in time for assessment, section 53 of the Session Laws of 1901, page 250, is a standing notice to such property owner to appear at that time and see that his property is properly assessed and valued, or to waive his rights in this regard. For further authorities in this regard, we cite *Oregon etc. Co. v. Lane Co.,* 23 Or. 386, 31 Pac. 964; *Ramp v. Marion Co.,* 24 Or. 461, 33 Pac. 681; *Kirkwood v. Ford,* 34 Or. 552, 56 Pac. 411; *Oregon etc. Sav. Bank v. Jordan,* 16 Or. 113, 17 Pac. 621; 27 Am. & Eng. Ency. of Law, 707; *Erwin v. Hubbard,* 4 Idaho, 170, 37 Pac. 274. The allegation of the appellant that the assessment was unequal and unjust as to it is not sufficient. (*State v. Sadler,* 21 Nev. 13, 23 Pac. 799; *Albuquerque Bank v. Perea,* 147 U. S. 87, 13 Sup. Ct. Rep. 194, 37 L. ed. 91; *National Bank v. Kimball,* 103 U. S. 732, 26 L. ed. 469; *Wagoner v. Loomis,* 37 Ohio St. 571-583.)

AILSHIE, J.—This action was commenced by the plaintiff, a Washington corporation, for the purpose of having an assessment against certain timber lands owned by plaintiff and situated in Kootenai county vacated and set aside, and to restrain and enjoin the collector from collecting a tax under such assessment. The plaintiff's first cause of action alleges that under the act of Congress approved June 4, 1897, the plaintiff had located forest reserve lieu land scrip on a body of government lands situated in Kootenai county, and that the location and selection had not been approved by the commissioners of the general land office up to January 12, 1903, and that on January 12th, the title to all such lands was still in the United States, and that the same was not taxable by or under the authority of the state of Idaho. The second cause of action alleges that prior to January 1, 1903, the plaintiff made soldiers' additional homestead applications under the act of Congress as embodied in sections 2306 and 2307 of the Revised Statutes of the United States, for certain lands situated in Kootenai county, but that none of said applications were approved or allowed by the commissioner of the general land office up to and including January 12, 1903, and that on January 12th the title to such lands still remained in the United States government, and that the same was not taxable by the state of Idaho. It is further alleged in each of the foregoing causes of action that the assessor and the board of commissioners, acting as a board of equalization, proceeded to and did assess all of the lands embraced under these scrip applications and locations for the year 1903. The third cause of action includes all the lands contained in both the first and second causes of action, and also lands which the plaintiff admits that it did own and were taxable for the year 1903. Plaintiff alleges, however, under the third cause of action that the assessment was made after the board of equalization had met and without notice to the plaintiff, and that the assessment so made was "far higher than the assessment of other lands in the county of Kootenai of precisely the same class, character and value, and are in excess of the fair values of said

lands.   Said assessments are unequal as compared with the assessments of lands in other parts of the county of Kootenai of the same class and character, and are unjust.''

The defendant demurred to the plaintiff's complaint, and the demurrer was overruled as to the first cause of action and was sustained as to the second and third causes of action.   Plaintiff refused to further plead and the court entered judgment of dismissal as to the second and third causes of action, and the defendant answered the first cause of action.   The plaintiff thereupon demurred to the answer and the demurrer was overruled by the court, and the plaintiff elected to stand on its demurrer.   Judgment was thereupon entered in favor of the defendants.   It is from these judgments that this appeal has been prosecuted.

The first proposition argued by the appellant is that the state had no right or authority to tax lands the legal and equitable title to which was still in the United States.   That neither the forest reserve lieu land scrip location nor the soldiers' additional homestead location had been accepted or allowed or approved by the commissioner of the general land office prior to the date on which the tax lien attached for the year 1903.   The respondent contends that such question does not arise in this case, and that if it should be resolved in favor of the appellant that still appellant could not succeed in this case.   Respondent insists that the appellant is estopped to deny that it was the owner of these lands and that they were taxable within Kootenai county for the year 1903, for the reason that appellant on July 16, 1903, through its legal and authorized agent, furnished the assessor with a statement of its taxable property for the year 1903, which statement contained a description of the identical lands from the payment of taxes on which the appellant is seeking to be relieved in this action.

There appears to be some diversity of opinion among courts as to how far the doctrine of estoppel will be carried in its application to the taxpayer who is required by statute similar to ours to furnish the assessor a statement of all

of his property. It seems to us upon an examination of the authorities that the general trend thereof is to hold the taxpayer estopped from denying his ownership of the property listed in his statement unless he shows that the same was done through fraud, accident or mistake. In *People v. Stockton etc. R. R. Co.*, 49 Cal. 414, the railroad company sought to avoid paying taxes on a tract of land which had been included in a statement furnished by its agent, but which, in fact, belonged to one Jackson. In considering this question the supreme court of California said: "It appears from the evidence that the list so furnished by the superintendent included, with other described property, the lots now claimed to have been owned by Jackson. We think the defendant should not be heard, against the admission of the pleadings, to disturb the authority of its agent, and that the list given by him to the assessor is binding upon the corporation, and justified the assessor in adopting it as a correct statement of its property."

In *San Francisco v. Flood*, 64 Cal. 504, 2 Pac. 264, the court, in discussing the duty of a taxpayer to furnish the assessor with a list of his property and the effect of his failure to do so, said: "Whether the description was furnished by the taxpayer, or was made by the assessor, the taxpayer having failed to furnish a list, the complaint of the taxpayer in regard to it should not be regarded. In our opinion it is the duty of the taxpayer to furnish a true and correct list of his taxables to the assessor, and if he fails to do so, and any loss should result to him in consequence of such failure, his complaints on such score should meet with no favor in a court of justice."

In *People v. Atkinson,* 103 Ill. 45, it is said: "Where a person makes out and delivers to the assessor of the town in which he keeps his business office, the schedule of the amount, quantity and quality of all his personal property required to be listed for taxation, he will be bound by such return, though a portion of the property is required to be returned by him to the assessor of a different town, where it is also assessed." This last case was cited with approval and fol-

lowed in *Re Bank of Marion,* 153 Ill. 516, 39 N. E. 118.
The syllabus to which case follows: ''In absence of any evi-
dence of fraud, accident or mistake, a property owner is
bound by a schedule of his taxable personal property given
by him to the assessor.''

In *Hamacker v. Commercial Bank,* 95 Wis. 359, 70 N. W.
295, the cashier of the bank had furnished the assessor with
a statement of the property of the bank which contained
$20,000 worth of personal property which did not in fact
belong to the bank and was not assessable to the bank.    The
supreme court, however, held that the bank and its officers
and receiver were estopped to deny that the bank was the
owner of such property.    On this branch of the case the
court said: ''Upon the tax-roll the bank was assessed di-
rectly as the owner of personal property valued at $20,000,
and the various items of taxes were carried out.    Although
this was an improper mode of taxation, we do not perceive
how the bank could escape from paying the tax which was
based upon a personal property return made by its own
cashier.    In such cases the principle of estoppel has been
frequently applied, and certainly with justice.    (25 Am. &
Eng. Ency. of Law, 209; *Ives v. North Canaan,* 33 Conn.
402; *Republic L. Ins. Co. v. Pollak,* 75 Ill. 293; *People v.
Stockton etc. R. R. Co.,* 49 Cal. 414.)    If the bank could
not question or resist the tax, no ground is perceived upon
which the receiver could resist it.''    To the same effect see
*Kirkwood v. Ford,* 34 Or. 552, 56 Pac. 411; *Phelps Mtg. Co.
v. Board of Equalization,* 84 Iowa, 610, 51 N. W. 50; *Lake
County v. Sulphur Bank etc. Min. Co.,* 68 Cal. 14, 8 Pac.
593; 27 Am. & Eng. Ency. of Law, 2d ed., 671.    It must
be conceded, we think, that the estoppel which has been ap-
plied against the taxpayer in the foregoing cases does not
rest upon the usual principles nor contain the elements neces-
sary or usually required in courts of equity in the applica-
tion of that doctrine.    It seems to be applied rather upon
the principle that it is the duty of the taxpayer to see that
a list of his property is furnished to the proper officers for
taxation, and although that fact might not be misleading

to the officers, that nevertheless when they have once acted upon it he shall not be allowed to thereafter question its correctness and thereby disturb the usual ordinary procedure pursued in the collection of taxes. The public at large have an interest in the collection of the just proportion of taxation from every property owner, and the reasons, therefore, become much stronger for holding the individual to a strict accountability when he seeks to avoid payment than in cases where the controversy arises between citizen and citizen. In opposition to the application of this principle of estoppel, counsel for appellant have cited *Charleston v. Middlesex*, 109 Mass. 270; *State v. Burrough*, 174 Mo. 700, 74 S. W. 610; *Chicago etc. Ry. Co. v. Cass Co.*, 51 Neb. 369, 70 N. W. 955; *Centennial Eureka M. Co. v. Juab Co.*, 22 Utah, 395, 62 Pac. 1024; *State v. Bellew*, 86 Wis. 189, 56 N. W. 782; *State v. Baker*, 129 Mo. 482, 31 S. W. 924; *People v. Central Pac. Ry. Co.*, 105 Cal. 576, 39 Pac. 905; *Central Pac. Ry. Co. v. People*, 162 U. S. 91, 16 Sup. Ct. Rep. 766, 40 L. ed. 903.

From an examination of these cases it will be seen that in the Missouri, Nebraska and both of the Wisconsin cases, the courts declined to apply this principle of estoppel, for the reason that the property which had been assessed was outside of and beyond the jurisdiction of the taxing officer and situated within the jurisdiction of another county. These courts held that inasmuch as property included in the statements made by the taxpayers was situated, as shown by these statements, beyond the limits of the county, and subject to taxation within another county, that the taxing officers therefore had no jurisdiction over the property and that the assessment was for that reason void. The Missouri court, however, in *State v. Burrough, supra*, observed that the defendants might be estopped from denying the ownership of the land described in the tax bill by reason of the fact that they furnished a list of their property including the land in question therein. *Centennial Eureka M. Co. v. Juab County, supra*, seems to rest for its authority upon two propositions: 1. The peculiarity of the Utah statutes

with reference to furnishing a statement by the taxpayer and the recovery of a tax which has been unlawfully collected; 2. On the broad principle that the furnishing of a statement by the taxpayer does not constitute such a fraud upon the taxing officer or the public, nor does it constitute such misrepresentation as to constitute an estoppel within the general meaning of that term as defined by the text-writers and authorities on that question.

On the general statement of the doctrine the Utah court is undoubtedly correct, but when we come to consider the respective duties and obligations imposed by law and public policy on the taxpayer on the one hand, and the tax assessing and collecting officer on the other hand, we at once see the necessity of a more liberal application of that principle in favor of upholding and enforcing an assessment and against the taxpayer. We are of the opinion that in the case at bar the appellant having furnished a statement which included these lands as its property, and the board of equalization and the assessor having acted on the faith of such statement, appellant should not now be heard to say that it did not own them. If these taxes are not paid and the property should be sold, such a sale cannot affect the government but only such right and title as the appellant has. The government is not here complaining, and it is difficult to see what injury can result to appellant on account of the assessment of those lands if indeed they belong to the government.

Passing now to a consideration of the question of notice, we will first observe the provisions of the revenue act of March 22, 1901. Sections 28 to 35 of the act (Sess. Laws 1901, pp. 245-248) make it the duty of every person owning property to furnish the assessor of his county a statement under oath setting forth specifically all of the real and personal property owned by such person or under his control at 12 M. on the second Monday in January of that year, and any person failing or neglecting to furnish such statement, under oath, after demand made therefor, is subject to the penalty of having his property listed and assessed by the assessor,

which assessment cannot thereafter be reduced by the board of equalization. (Sec. 35.) By section 91 of the act it is made the duty of the assessor to complete his assessment-roll on or before the first day of July in each year, and he and his deputies must take and subscribe the oath provided therein. By section 92 the assessor is required as soon as the assessment-roll is completed to deliver the same, together with the statements furnished him by the taxpayers, to the clerk of the board of county commissioners, who is required to immediately give notice thereof of the time of the meeting of the board of equalization by publication in a newspaper printed and published in the county. By section 53 of the act it is made the duty of the board of county commissioners to meet on the second Monday in July of each year as a board of equalization. At this meeting it is the duty of the board to examine the assessment-roll name by name, together with the valuation of property of each taxpayer assessed, and raise or cause to be raised any assessment of property which in the judgment of the board has not been assessed at its fair cash value. By section 60 it is provided that at such meeting the board "may direct and require the assessor to assess any taxable property that has escaped assessment, increase any valuation or add to the amount, number, quantity or value of any property, when a false, inaccurate, or incomplete list has been furnished or rendered." By the same section it is provided that "All persons whose assessment is altered, modified, or affected in the amount of valuation of property charged to them, shall be notified by the clerk of said board by letter deposited in the United States mail, postpaid and addressed to such person interested, at least ten days before the final action is taken in fixing and equalizing such assessment, of the day fixed when he may be heard upon the matters affecting the assessment of his property for taxation, which shall be on the fourth Monday in July of each year, or as soon thereafter as he can be heard or his matter be reached." By the provisions of section 53 above referred to it is made the duty of the board to continue in session for the purpose of

equalizing assessments "until the business of equalization is disposed of." Section 65 provides that the board shall meet on the fourth Monday in July "and continue in session until all the parties appearing have been heard, and until all the proposed additional assessment, changes and corrections have been acted upon, . . . . and the clerk of the board must keep a record of their proceedings, and as auditor he may receive from the tax collector the original assessment book, and may retain the same for the time necessary to enter the additional assessments, changes and corrections ordered by the board."

Appellant complains that it had no notice that its property had been assessed and no opportunity to appear before the board of equalization. We find the following state of facts as contained in the record: The board of commissioners met as a board of equalization on July 13, 1903, and continued in session until July 16th, when they adjourned until July 20th. On July 20th they convened and continued in session during that day, and thereupon adjourned until July 27th. On July 27th, which was the fourth Monday, they met and continued in session until the 28th, when they adjourned *sine die.* The assessor alleges that he completed the assessment-roll for the year 1903 on the eleventh day of July, and delivered the same to the clerk of the board of commissioners, and that prior to that time he had no knowledge or information concerning the property described in plaintiff's complaint, and for that reason the same had not been by him assessed up to the time he completed the roll and delivered it to the clerk of the board. That prior to the sixteenth day of July, 1903, the plaintiff had failed and neglected to furnish the assessor with a statement of its property, and that on the sixteenth day of July he made a request that it furnish such list, and that thereupon the plaintiff furnished a statement as required by law which contained a description of the property described in plaintiff's complaint, and concerning the assessment of which the plaintiff is complaining in this action. The assessor further alleges that thereafter, and on about the twenty-eighth

day of July, 1903, the board of commissioners, while sitting as a board of equalization, and knowing of the list and statement which had been furnished to the assessor by the plaintiff, ordered and directed the assessor to assess the property contained in said statement as property that had escaped taxation, and that he, as assessor, thereupon, in compliance with the order of the board, placed the property on the assessment-roll and made the assessment as exhibited in plaintiff's complaint and that after such assessment was made the board of equalization did not alter, change or modify such assessment in any manner. It therefore appears that the assessment complained of in this action was a new and additional assessment made under the provisions of sections 60 and 65 of the revenue act, *supra.* Under the provisions of that act it is the duty of the board to convene on the second Monday of July and examine the assessment-roll and order any raises or changes that it may deem necessary, and to require notice thereof given to the taxpayer by the clerk, and that at their second meeting convened on the fourth Monday they hear any complaints made against any proposed raises or changes, and at the latter meeting they finally determine and pass upon such matters. At the first meeting they are also required to direct the assessor to make any new or additional assessments where property has escaped assessment. The times of both of these meetings are fixed by statute, and in addition thereto it is made the duty of the clerk of the board to publish notice of the time and place that the board of equalization will meet. These statutes and the publishing of such notice give ample opportunity to every taxpayer to appear before the board in relation to any matter of assessment concerning which he desires to be heard. In this case the appellant furnished the assessor with a list of its property between the second and fourth Mondays of July (July 16th), and it must have known as a matter of fact the purpose of this statement and the use to which it would be put by the assessor and the board of equalization. In addition to this actual notice, the appellant had notice by statute that the board would

convene on the fourth Monday and finally pass upon all new and additional assessments. As a matter of fact the board did convene in conformity with law, and at such meeting it directed this property assessed, and after it was placed upon the assessment-roll and assessed by the assessor, it appears that such assessment was satisfactory to the board of equalization, and they thereafter made no alteration or change therein. It is true that plaintiff alleged that the assessment was made after the adjournment of the board, but as the case comes here on demurrer to the answer, we must concede all the allegations of the answer. If appellant had been present during this last session of the board, it would have had its opportunity to be heard concerning the assessment and valuation placed upon its property, and if it failed to do so it was its own fault and it should not be heard to complain at this time.

Section 60 only requires notice to be mailed to persons who have already been assessed and whose assessments are "altered, modified, or affected in the amount of valuation of property charged to them." There is no requirement that a notice be mailed to a person who has never been assessed and whose assessment is ordered by the board. Every person who has not been assessed prior to the date on which the assessor delivers the assessment-roll to the clerk of the board has notice that the board will order his property assessed if they discover it. Therefore, if any person whose property has not been assessed wants to know the amount for which his property is assessed or to be heard in relation thereto, he should appear during the session convened on the fourth Monday in July and present his grievances. (*Oregon etc. Ry. Co. v. Lane County*, 23 Or. 386, 31 Pac. 964; *Ramp v. Marion County*, 24 Or. 461, 33 Pac. 681; *Kirkwood v. Ford*, 34 Or. 552, 56 Pac. 411; *Albany Mutual Bldg. Assn. v. City of Laramie*, 10 Wyo. 54, 65 Pac. 1011; *Aggers v. People*, 20 Colo. 348, 38 Pac. 386; *United States Trust Co. v. Territory*, 10 N. Mex. 416, 62 Pac. 987; *Orr v. State Board of Equalization*, 3 Idaho, 190, 28 Pac. 416.)

The judgments appealed from are affirmed.    Costs awarded to respondents.

Sullivan, J., concurs.

STOCKSLAGER, C. J.—It must be conceded that lands belonging to the government are not assessable to anyone so long as the title remains in the United States.    The homesteader or entryman under any of the provisions of the land laws can only be assessed for the improvements he may have on the land.    It is true in this case that the land in controversy was returned by an agent or officer of the corporation as part of the assets of the company or corporation. It is possibly true that after such return they should not be heard to complain of the assessment, as the defendant assessor was in no way responsible for the error, if such it was, in the return of the property.    Entertaining these views, I express no opinion as to the rights of recovery in this action.

### ON REHEARING.

#### (December 30, 1906.)

SULLIVAN, J.—A petition for rehearing has been filed in this case, and it is stated therein that "it is apparent from a reading of the opinion relating to the third cause of action that the court assumed that the respondent filed an answer to this cause of action, whereas the fact is, as stated in the first part of the opinion, that the respondents demurred to this cause of action and the demurrer was sustained.    This being true, it seems to us that an entirely different aspect is put upon this part of the case."    And in support of that contention counsel quotes from the opinion as follows: "It is true that the plaintiff alleged that the assessment was made after the adjournment of the board, but as the case comes here on demurrer to answer, we must concede all the allegations of the answer."    The facts are as follows: The complaint purports to state three causes of action; a demurrer was sustained to the second and third, and overruled as to the first.    That left the complaint stand-

ing with one cause of action. To that cause plaintiff answered and to no other. The court does not intimate in the opinion that the respondents answered either cause of action but the first. On the trial the issues were made up by the first cause of action in the complaint and the answer thereto, the second and third causes of action having been stricken out on demurrer. No evidence whatever was introduced on the trial, and it is stated in the judgment as follows: "By agreement of counsel, the first cause of action of the plaintiff's amended complaint and the defendant's answer thereto were submitted to the court for decision, the respective counsel agreeing that the facts set forth in the plaintiff's first cause of action and the defendant's answer thereto, correctly set forth the issues."

Upon that state of facts the court in its decision must find all of the material allegations of the complaint denied by the answer in favor of the defendant. Upon all issues denied by the answer, the plaintiff must produce a preponderance of evidence to recover, and the lower court, we think rightly concluded that on the complaint and the answer thereto, the plaintiff was not entitled to a judgment. (*Walling v. Bown,* 9 Idaho, 184, 72 Pac. 960; *Mills Novelty Co. v. Dunbar* (Idaho), 83 Pac. 932.)

It is further contended by petitioner that it is not pretended that the list of taxable property furnished the assessor was the official statement which the assessor had a right to exact and which the law provides must be sworn to, and for that reason the doctrine of estoppel will not apply. We cannot agree with that contention. The appellant furnished a list, and under the facts of this case, whether it be sworn to or not, whether it be the official list or not, he is estopped at this time from denying that it is correct. The petition for rehearing is denied.

Stockslager, C. J., and Ailshie, J., concur.