CLEARWATER TIMBER CO. v. NEZ PERCE COUNTY.

(Circuit Court, D. Idaho, N. D. July 1, 1907.)

No. 362.

1. TAXATION—SUIT TO ENJOIN COLLECTION OF TAXES—ESTOPPEL.

The mere fact that a complainant accepted and recorded a deed purporting to convey to it lands, the legal and equitable title to which were both in fact in the United States, does not estop it to maintain a suit in equity to enjoin the collection of taxes levied on said lands by the taxing officers of the county who had actual knowledge of the condition of the title and of the claim of complainant that the land was not taxable and were not misled by such deed or record.

[Ed. Note.—Persons entitled to injunction restraining or damages for wrongful enforcement of tax, see note to Bayles v. Dunn, 54 C. C. A. 550.]

2. SAME—PROPERTY SUBJECT TO TAXATION—IDAHO STATUTE.

The Revenue Law of Idaho (Sess. Laws 1901, p. 238, § 11), provides that "all taxable property shall be assessed in the county, city, or district in which it is situated on the second Monday in January, or if not within the state on that day on the day of assessment. The assessor * * * must assess such property to the persons by whom it was owned or claimed * * * at 12 o'clock m. of the second Monday in January next preceding, or on the day of assessment as aforesaid." Section 31, page 247, requires the taxpayer to state under oath that the lists returned by him contain all of the property owned by him on the second Monday in January, if it was then within the state, and Ann. Code 1901, § 1318, provides that every tax upon real estate shall attach as a lien as of the second Monday of January of each year. *Held,* that under such statutes the status of property within the state for purposes of taxation is fixed on the second Monday in January, and that real estate exempt from taxation on the second Monday of January of any given year does not become subject to taxation during that year, even though transferred to a person in whose hands it is no longer exempt under the law.

In Equity.

James E. Babb and Stiles W. Burr, for complainant.
Daniel Needham and B. S. Crow, for defendant.

DIETRICH, District Judge. The bill of complaint in this suit was filed in this court January 9, 1906, the same date on which the bill in Clearwater Timber Co. v. Shoshone County, 155 Fed. 612, and others, in which a decision has just been rendered, was filed.

The suit was brought to enjoin the defendant county and its officers from enforcing the payment of taxes levied for the year 1905 upon the lands described in the bill against Shoshone county; the territory embracing the same having, during the latter part of 1904, by proper proceedings, been cut off from Shoshone county and annexed to Nez Perce county, so that if the lands were assessable at all during the year 1905 they were assessable in Nez Perce county. Excepting the year for which the taxes were levied, the bill states substantially the same facts as are set forth in the bill in the Shoshone County Case. The mode of assessment, however, was different; for, instead of describing and valuing all of the lands aggregating 45,000 acres, as a unit, as was done in Shoshone county, the officers of Nez Perce county divided the lands into 15 groups, and each group was taken as a unit, and valued as such, and after delinquency and adver-

tisement each group was sold as a unit and certificate of sale therefor was by the assessor and tax collector issued to Nez Perce county, the purchaser.

After the bill was filed practically the same proceedings were taken as in the Shoshone County Case. The answer does not make as many admissions as were made in the other case, and, in addition to the denials, some facts are pleaded by way of estoppel. The affirmative allegations·in this regard are that in the year 1901 the Northern Pacific Railway Company executed and delivered to the plaintiff a deed purporting to convey to the plaintiff all of the lands in question, and thereafter and prior to January 1, 1905, the plaintiff caused this deed to be recorded in the office of the county recorder of Shoshone county, and thereafter the record of this deed together with other records of Shoshone county was transcribed and became a part of the records of Nez Perce county under the provisions of the act of the Legislature of the state of Idaho, cutting off a part of Shoshone county and annexing the same to Nez Perce county, that the defendant county's assessor found said deed of record, and that thereupon he assessed the land therein described to the plaintiff; and it is claimed by the defendant that the execution and delivery of said deed to the plaintiff, and the placing of the same upon record, constituted such conduct upon its part as to estop it from denying that the lands were, at the time of the recording of the deed, the property of the plaintiff, and that the conclusive presumption arises from the acceptance and the recording of said deed, that the property therein described both equitably and legally belonged to the plaintiff. It is not alleged that the defendant county or any of its officers were misled by the deed or the record thereof; or that the.plaintiff otherwise represented to the defendant county or its officers that it was the owner of the property; or that, under the law, it made or delivered to the assessor and tax collector a statement of the property owned or claimed by it in Nez Perce county, containing a description of or referring to any of these lands; nor is it alleged that the defendant county and its officers were not at all times fully cognizant of the status of the title to these lands.

The case has been submitted upon substantially the same proofs, stipulations, and orders as in the suit against Shoshone county, and I must reach the same conclusion, unless the defense of estoppel which was not specifically pleaded in the other case is well founded; or unless government lands in Idaho, the title to which passes after the second Monday in January of a given year, are assessable for taxes during and for that year, it appearing that some of the selections in question were approved by the·officers of the land department during the year 1905 and after the second Monday of January in that year.

As is stated in the opinion rendered in the Shoshone County Case, the first group of lands described in the complaint and selected under the act of March 2, 1899, was approved by the Secretary of the Interior on June 7, 1905. No other selection under that act was approved until the following year. The selections made under the act of June 4, 1897, were approved, one on December 6, 1905, one on April 21, 1905, and the third one on May 21, 1905.

In support of their plea of estoppel the proof offered upon behalf of the defendants is in strict accord with the allegations of fact made in the answer, and it appears therefrom that the railway company executed and delivered to the plaintiff in 1901 an instrument, substantially as alleged, and the same was placed of record in the office of the county recorder of Shoshone county and thereafter was transcribed and became a part of the records of Nez Perce county. Upon the other hand, evidence introduced upon behalf of the plaintiff discloses the fact that early in the year 1905 the plaintiff and its officers were cognizant of the actual status of the title to the lands in controversy; and, further, that in a proceeding taken in connection with a controversy between Shoshone county and Nez Perce county, relative to the adjustment of the accounts and property rights of said counties, in pursuance of the act of the Legislature annexing a portion of Shoshone county to Nez Perce county, the defendant county set forth the status of the title to these lands, and asserted that the same, during the year 1903, were the property of the United States, and were not assessable, and that the assessment and the sale thereof for delinquent taxes by Shoshone county were void and of no effect; and, indeed, it is conclusively shown that the defendant county and its officers were, in the early part of the year 1905, not only aware of the status of the title to these lands, but also knew of the contention of the plaintiff that they were not subject to taxation at that time.

It seems that in some jurisdictions the general doctrine of estoppel has been applied in cases where the taxpayer has returned to the assessor for the purpose of assessment or taxation property which does not belong to him; and that appears to be the rule adopted by the Supreme Court of Idaho, as disclosed in the case of Inland Lumber & Timber Co. v. Thompson, 11 Idaho, 508, 83 Pac. 933. In that case lands which had been selected under the act of June 4, 1897 (30 Stat. 11, c. 2), but the selection of which had not been approved, were assessed by the county assessor of Kootenai county, and the plaintiff brought an action to annul and set aside the assessment. The court denied the relief prayed for, but did not, as I construe the decision, pass upon the general question as to whether or not lands in that condition are assessable. It bases its conclusion solely upon the ground that the plaintiff had returned to the assessor as a part of its taxable property in that county the lands in question. The court states that there is a diversity of opinion, but concludes that the general trend of authority is "to hold the taxpayer estopped from denying his ownership of the property listed in his statement, unless he shows that the same was done through fraud, accident, or mistake." This Idaho case is the only one cited by counsel for the defendants in support of this defense; and complainant contends that the decision is not in harmony with the weight of authority and especially with the decisions of the federal courts. But it is unnecessary, in this case, to determine upon which side the weight of authority lies, or what the doctrine of the federal courts is. It is admitted that the estoppel which is applied against the taxpayer by the decisions announcing that view is a wide departure from and lacks some of the elements of estoppel as defined by courts of

equity in ordinary cases between private individuals, and is based upon the listing by the taxpayer of his property for taxation and the furnishing by him to the revenue officers of such list and the adoption thereof by them in performing their public duties. There may be some reason in public policy why, if a taxpayer has deliberately furnished to the proper officers a list of his property expressly for the purpose of having the same assessed and taxed, and if the revenue officers have once acted upon such representation and assessed the property, the taxpayer should not be heard to question the correctness of the list which he himself has made and furnished. But in no case called to my attention has the doctrine of estoppel been applied as against the taxpayer, upon facts such as are disclosed by this record. The plaintiff made no representation to the assessor, and did not list this property for taxation; and the assessor not only was not misled by any act on the part of the plaintiff, but well knew, at the time the property was assessed, the status of the title, and that the plaintiff contended it was not subject to assessment. There is, therefore, no analogy between this and the Inland Lumber Company Case, and I think it is clear that no estoppel, even under the rule adopted by the Supreme Court of Idaho, is here disclosed.

The remaining question is whether or not the lands, the selection of which was approved after the second Monday of January, 1905, and during the year 1905, were assessable for taxation during that year. Counsel for the defendant quotes from the decision of the Idaho Supreme Court in Inland Lumber Company v. Thompson, supra, the following language:

"Every person who has been assessed prior to the date on which the assessor delivered the assessment roll to the clerk of the board has notice that the board will order his property assessed if they discover it. Therefore, if any person whose property has not been assessed wants to know the amount for which his property is assessed, or to be heard in relation thereto, he should appear during the session convened on the fourth Monday in July and present his grievances."

And concludes from this expression that:

"It is clear from the above that under the laws of this state property is assessed at any time between the second Monday of January and the fourth Monday of July of each year, and all property discovered before the adjournment of the board must be assessed by the assessor and equalized by the board before its adjournment of the session held on the fourth Monday of July."

If counsel's contention is that the assessor, in assessing property for the year, may adopt any date between the second Monday in January and the fourth Monday of July of each year as the time for determining the title, value, and general status of the property, I am wholly unable to adopt the view; and I do not think the language of the Idaho Supreme Court, above referred to, can be properly construed as announcing such a doctrine. As I construe the statutes of Idaho relative to assessing property, all property in the state upon the second Monday of January of any given year is to be valued as of that date, and its title and status are to be determined as of that date. It is, of course, not necessary for the assessor upon that date actually to determine to

whom the property should be assessed and to fix the value thereon and to enter the assessment in the assessment book. Obviously that would be impossible. The assessor, by the statutes, is given a certain length of time to perform his duties in assessing property and entering the necessary data upon the assessment book, and that may be done, as indicated by the Supreme Court in the language above quoted, under some circumstances, as late as the fourth Monday in July. But if the assessment is actually made on the fourth Monday in July, and if the entries pertaining to the assessment are actually entered in the assessment book upon that date, the officers are not to consider the status of the property or its value upon the fourth Monday of July, but they are to give to the property such value as it had upon the second Monday of January, provided it is property which was in the state of Idaho upon that date. Section 11 of the Revenue Laws of Idaho (Sess. Laws 1901, p. 238) provides:

"All taxable property shall be assessed in the county, city or district, in which it is situated on the second Monday in January, or if not within the state on that day, on the day of assessment; the assessor must between the second Monday in January and the first day in July in each year, ascertain the names of all taxable inhabitants and all property in his county subject to taxation, and must assess such property to the persons by whom it was owned or claimed, or in whose possession or control it was, at 12 o'clock m. of the second Monday in January next preceding, or on the day of assessment as aforesaid."

It is very clear from this language that the status of property within the state of Idaho, at 12 o'clock noon, on the second Monday in January, must be taken as the basis for the assessment of such property for that year. But if the property is brought into the state subsequent to that date and during the fiscal year, its status upon the day of its actual assessment may be taken as the basis of the assessment.

The lands in question were as much in the state of Idaho on the second Monday of January, 1905, as were any other lands, by whomsoever they may have been owned. The residence or nonresidence of the holder of the title to lands is wholly immaterial in considering their location for the purpose of assessment, and it is likewise immaterial, in considering the locus of the property that upon the second Monday of January the title to the lands in question was vested in the United States. Nor is it of any more importance that the title passed from the United States to a private person during the fiscal year, than it would be if the title passed from one private person to another. If this property was exempt from taxation upon the second Monday of January, 1905, it was exempt from taxation for the year 1905, and its subsequent transfer could not deprive it of this exemption.

Under the laws of Idaho the property of a resident widow woman of a value not in excess of $1,000 is exempt from taxation. Suppose that a widow woman with a home valued at $1,000, and having no other property, should sell and convey it during the month of June, would the property thereupon become assessable to the purchaser for the taxes for that year? If so, for the taxes for the entire year, or only for an aliquot part thereof? There is a provision in the Idaho statutes governing the assessment of transient stock for portions of

the year, but my attention has not been called to any such provision relating to real estate. If it may be assessed to the purchaser for the entire year, what becomes of the widow's exemption? Whether or not the property so purchased can be burdened with the taxes for that year is a material consideration to the purchaser, and if, upon the consummation of the purchase, he must assume the burden of paying the taxes for that year, he will necessarily pay less for the property and the guaranteed exemption will thus be rendered worthless to the widow.

Upon the other hand, suppose a corporation owns a piece of real estate upon the second Monday of January of the value of $1,000, and 10 days thereafter it sells the same to a resident widow, would any one contend that the corporation would escape any part of the tax for the entire year? Section 1318, Ann. Code 1901, of Idaho, provides that "every tax * * * upon real estate is a lien against the property assessed * * * which several liens attach as of the second Monday of January in each year." If, therefore, lands owned by the United States on the second Monday of January and thereafter conveyed to a private person can be assessed to such person for such year, it necessarily follows that the lien of the tax attaches to the lands as of a date when the title thereto is still in the United States.

Again, under the provision of section 31, Revenue Law 1901 (Sess. Laws, p. 247), in the oath attached to the return of his property, the taxpayer must state that the list contains all the property owned by him "on the second Monday in January, and now own, claim, possess, or control, and which was not within the state on that day." It is very clear that the Legislature intended that all nonmovable property should be assessed as of the second Monday of January, and that the authorization to value property or consider its status upon the day of its assessment relates only to personal property, that which is movable and may be taken from one state to another.

Some injustice or inequality necessarily results from this method of assessment; that is, by taking the value and ownership upon a certain day of the year, arbitrarily fixed by statute. In this case the plaintiff escapes the burden of any taxation for that part of the year 1905 during which it was the owner of all or a part of these lands. Other inequalities may likewise result. For instance, under abnormal conditions, and sometimes under normal conditions, the value of property changes very rapidly. The value of a tract of land, almost worthless upon the second Monday of January, may be multiplied many times before the first of July. In such cases, if the value is to be taken as of the second Monday of January, the owner escapes a fair share of taxation, based upon the average value of the land during the entire year. And, upon the other hand, a piece of property may be very valuable upon the second Monday of January, and may, shortly thereafter become almost worthless, or may be entirely destroyed by fire or some other agency, in which case the owner would be compelled to bear an undue burden of taxation. In 1 Cooley on Taxation [3d Ed.] p. 604, the learned author says:

"Assessments are made periodically, and in many of the states every year. The customary regulation is that the assessment shall be made or completed on

a certain day, or that it shall be made as of a certain day. This fixes the liability of persons and property to taxation for the year. There are some inconveniences and inequalities resulting from this, but some regulation of the kind is indispensable. A force of tax officers cannot be kept employed for the year in watching the transfers of property, the movement of persons, and the vicissitudes of business, in order to equalize the charges upon them. Periodical assessments, if they produce injustice in one case, may correct it in the next, and on the whole are likely to be fair. At any rate, they constitute the best regulation the law can establish."

The view that, if under the statutes of Idaho real estate is exempt from taxation on the second Monday of January of any given year, it does not become subject to taxation during that year, even though transferred to a person in whose hands it is no longer exempt under the law, is the only one which I am able to harmonize with the theory and scheme of taxation as disclosed by the statutes of Idaho, and it is in accord with the decisions of other courts where similar statutory provisions have been considered. Wildberger v. Shaw, 36 South. 539, 84 Miss. 442; Baltimore v. Jenkins, 53 Atl. 930, 96 Md. 192; Railway Co. v. Commonwealth (Ky.) 49 S. W. 548. Electric Co. v. New Orleans, 14 South. 231, 45 La. Ann. 1475; Martin v. Drake, 41 N. W. 942, 40 Minn. 137; King v. City of Madison, 17 Ind. 48; Long v. Culp, 14 Kan. 412; Swann & Billups v. State, 77 Ala. 545. Indeed, my attention has not been called to any case announcing a different rule.

It follows from the views expressed in the case of Clearwater Timber Co. v. Shoshone County and Others, 155 Fed. 612, and herein set forth, that the prayer of the plaintiff's complaint must be granted.