(No. 6278.   May 26, 1936.)

LARGILLIERE COMPANY, BANKERS, a Corporation, Respondent, v. CARIBOU COUNTY, a Political Subdivision of the State of Idaho, and RALPH S. GORTON, as County Treasurer and Tax Collector of Caribou County, Idaho, Appellants.

[58 Pac. (2d) 466.]

R. J. Dygert, for Appellants.

Merrill & Merrill, for Respondent.

HOLDEN, J.—August Largilliere and E. W. Largilliere, father and son, owned and operated a bank and were engaged in the banking business at Soda Springs, Idaho, under the name of Largilliere Company, Bankers, until the year 1921, at which time the bank was incorporated by the Largillieres. Before incorporation, a tract of 480 acres of land, located in Caribou County, was conveyed to August and E. W. Largilliere. August 25, 1922, the Largillieres conveyed the property to the corporation. February 2, 1925, Largilliere Company, Bankers, entered into a written contract to sell the tract of land to Charles W. Fryar and Edla Fryar, his wife, for the sum of $10,000, payable in deferred installments. The contract was not recorded. It required the Fryars to pay all taxes levied against the property after January 1, 1926. The Fryars were ranchers and stock-growers, owning both real and personal property in Caribou County. Until his death, November 8, 1928, August Largilliere was president of Largilliere Company, Bankers. May 5, 1925, A. (August) Largilliere made and signed under oath a taxpayer's statement in which a description of said property was entered, and in which the bank, to wit, Largilliere Company (Bankers), was entered as the owner. In 1926, the real property was assessed as it had been the year before, in the name of Largilliere Company (Bankers), as the owner. In the years 1927, 1928 and 1929, respectively, C. W. Fryar made a taxpayer's statement in which he entered or caused said real property to be entered in the names of Largilliere Company (Bankers) and C. W. Fryar, as owner. In the years 1930 and 1931, respectively, Fryar made a taxpayer's statement in which he entered or caused the real property to be entered in his own name, as owner.

In 1928, a real property tax was assessed against the land in the sum of $158.75; in 1929, a real property tax was assessed against the land in the sum of $99.59; in 1930, a real property tax was assessed against the land in the sum of $172.55, and in the year 1931, there was assessed a tax against said real estate in the sum of $142.96, which said taxes, to-

gether with delinquent penalties, and interest, on the 4th day of June, 1934, amounted to $603.08.

In the year 1928, a personal property tax was levied against the personal property of the Fryars in the sum of $196.37; in the year 1929, an additional personal property tax was levied and assessed against the personal property of the Fryars in the sum of $86.65; in the year 1930, an additional personal property tax was levied and assessed against the personal property of the Fryars in the sum of $129.45, and in the year 1931, an additional personal property tax was levied and assessed against the personal property of the Fryars in the sum of $54.34. June 4, 1934, the total of said personal property taxes, with interest thereon, amounted to the sum of $489.63.

Appellants transferred the Fryar personal property taxes to the said 480-acre tract of land owned by respondent, in an attempt to make the same a lien upon the said real property. Apparently, on, or shortly after, June 4, 1934, respondent tendered to appellants the said sum of $603.08, which was the full amount of principal, penalties and interest of said real property taxes to the date of tender, with the request that appellants accept the same and clear said real estate of all tax liens. Appellants refused to accept the tender. Some time between June 4th and June 29th, 1934, the contract was canceled because of the default of the Fryars in the payment of the installments of the purchase price, and respondent repossessed the land covered by the contract. June 29, 1934, this suit was commenced to quiet the title of respondent to the said 480-acre tract of land against any and all claims of appellants, based upon the attempted levy of said Fryar personal property taxes against the land.

December 6, 1934, the case was tried. March 25, 1935, findings of fact were made and conclusions of law filed, and, on the same day, decree was rendered and entered in favor of respondent and against appellants. April 6, 1935, appellants moved for a new trial upon the ground of newly discovered evidence. May 22, 1935, the motion was denied. The appeal to this court is from the decree and the order denying appellants' motion for a new trial.

Appellants contend, first, that respondent is estopped to deny that the 480-acre tract was the property of Fryar in this: that when a taxpayer's statement was presented to August Largilliere (president of respondent), he "informed the Assessor that the property was the property of C. W. Fryar and should be assessed to him"; that "the Assessor relied on this information and assessed the property as property of C. W. Fryar"; in other words, appellants contend that August Largilliere, as president of Largilliere Company, Bankers, misled the assessor of Caribou County into assessing the said tract of land as the property of Fryar; that, otherwise, the property would have been assessed as the property of respondent. Secondly, appellants contend that the court erred in overruling their motion for a new trial.

There is a substantial conflict in the evidence on the question of estoppel. In substance, the assessor testified that he presented a taxpayer's statement to August Largilliere May 5, 1926, and that Largilliere told him that they (respondent) had sold the property to Fryar, and that the tax notices should go to him. On the other hand, E. W. Largilliere testified that his father, August Largilliere, was sick in Salt Lake City, Utah, before, at the time, and quite a while after, May 5, 1926, which testimony was supported by family correspondence. Upon that evidence, the court found against the contention of appellants and found, among other things, that respondent "did not at any time make any statement that would have misled the Assessor of Caribou County, Idaho, or to have caused him to believe that he was in any sense authorized to impose personal property tax of C. W. Fryar upon the real estate hereinbefore described" (referring to said 480-acre tract of land). Assuming, for the purpose of argument, that August Largilliere told the assessor that respondent had sold the property to Fryar and that the tax notices should go to him, Largilliere did not thereby misrepresent the facts, because it was true that respondent had sold the property, as it had a right to do, to Fryar, under an executory contract, and, Fryar having agreed to pay the taxes on the real property, Largilliere, with exact truth, told the assessor that the tax notices should go to Fryar; but that, as the court found, did not mislead the

assessor into believing that he was authorized to impose the Fryar personal property taxes upon the said real property owned by respondent and covered by the contract. This court has repeatedly held that where there is a substantial conflict in the evidence, the decision of the court and judgment thereon will not be disturbed. (*Markham v. Davy,* 42 Ida. 545, 247 Pac. 12; *Portland Cattle Loan Co. v. Hansen Livestock & Feeding Co.,* 43 Ida. 343, 251 Pac. 1051; *Oatman v. Hampton,* 43 Ida. 675, 256 Pac. 529; *Smutz v. Scott,* 44 Ida. 534, 258 Pac. 525; *Carter v. Niday,* 46 Ida. 505, 269 Pac. 91; *Johnson v. Gustafson,* 49 Ida. 376, 288 Pac. 427; *Weigle v. Salmino,* 49 Ida. 522, 290 Pac. 552; *Intermountain Association of Credit Men v. N. H. Hallstrom Coal Co.,* 53 Ida. 151, 22 Pac. (2d) 686.)

In support of their contention that respondent is estopped, appellants cite and rely upon *Inland Lumber Co. v. Thompson,* 11 Ida. 508, 83 Pac. 933, 114 Am. St. 274, 7 Ann. Cas. 862. The rule in that case cannot be applied to the case at bar because appellants failed to establish the facts necessary to bring the case at bar within the rule therein announced.

▮ There remains for consideration the contention that the court erred in denying appellants' motion for a new trial. The motion for a new trial was supported by the affidavit of T. W. Horsley, assessor of Caribou County, between January 1, 1924, and January 14, 1935, and by the affidavit of R. J. Dygert, attorney for appellants. In the affidavit of Mr. Horsley, it is stated, in substance: that among the records of the assessor's office, there were property statements made by respondent, covering a ten-year period, from 1924 to 1934; that such statements listed the 480-acre tract of land as belonging to respondent up to 1925 "but that said property is not listed again as the property of the plaintiff in the said Assessor's Office until 1934"; that "diligent search was made by him just prior to the trial of the above entitled cause for all records that might be material in the trial of said cause"; that "after said trial affiant accidentally found said statements in his files. . . . . "

In his affidavit, Mr. Dygert, in brief, states: that evidence was discovered by the assessor (Mr. Horsley), which, in his opinion, is very material to the issues in the case; that such

evidence was not discovered before or at the time of the trial "and could not with reasonable diligence have been discovered for use at said trial."

That respondent did not list the 480-acre tract as belonging to it is not controlling in view of the fact that respondent had sold the property to the Fryars, under an executory contract, and that the Fryars had agreed to pay all taxes levied against the property after January 1, 1926. The sale of the property, under the executory contract, and the promise of the Fryars that they would pay all taxes levied against the property after January 1, 1926, sufficiently explains the failure of respondent to include the 480-acre tract in its statements made during the ten-year period, from 1924 to 1934. And the fact that the Fryars did not agree to pay the taxes levied against the property for the year 1925, but did agree to pay all taxes levied after January 1, 1926, fully explains the reason respondent listed such property for assessment in its own name for the year 1925.

Judgment affirmed. Costs awarded to respondent.

Givens, C. J., and Budge, Morgan and Ailshie, JJ., concur.