Argued November 21, 1895; decided January 13, 1896.

## GODFREY *v.* DOUGLAS COUNTY.

[43 Pac. 171.]

1. COURTS—"NEXT TERM" DEFINED—CODE, § 2781—STATUTORY CONSTRUCTION.— The words "next term" as used in section 2781, Hill's Code, referring to the time when the county court may complete the work of the county board of equalization, mean the next session of the court after the board has adjourned: *Tompkins* v. *Clackamas County*, 11 Or. 364, distinguished. This statute being one relating to the public revenue, it should not be strictly construed.

2. SPECIAL AND GENERAL APPEARANCE—PRESUMPTION.— An appearance by a party will be presumed to have been general so as to give the court jurisdiction of the person, where the record fails to show that the appearance was special.

3. EQUALIZATION OF TAXES—PRESUMPTION.— That alterations are made by the board of equalization on the assessment roll, upon pages before and after that on which appears an assessment against a given taxpayer, raises no presumption that the board approved such assessment.

4. EQUALIZATION OF TAXES—PRESUMPTION.— Where an assessment roll contains a column headed "As Equalized by the County Board," it will be presumed, where no entry appears in that column opposite an assessment, that the assessment was not equalized by the county board.

5. JUDGMENT EQUALIZING AN ASSESSMENT—PRESUMPTION.— Where a taxpayer who has been notified to show cause before a county court why his assessment should not be increased appeared on the hearing, it will be presumed, on a writ to review a judgment increasing the assessment, that the judgment was rendered on sufficient evidence, though the record does not show on what it was predicated, or that it was rendered on any evidence: *Becker* v. *Malheur County*, 24 Or. 217, approved.

APPEAL from Douglas: J. C. FULLERTON, Judge.

This is a special proceeding by O. F. Godfrey, Peter Hume, and S. C. Flint, partners doing business under the firm name of the Douglas County Bank, to have the action of the County Court of Douglas County in the matter of increasing an assessment re-

viewed by the circuit court. The record shows that
on July seventeenth, eighteen hundred and ninety-
three, the county court made an order extending the
time until the first Monday in October for the county
assessor to return the assessment roll; that on Sep-
tember sixth the court met, and continued in regular
session until the eleventh of that month, at which time
it adjourned to October ninth; that the assessor within
the extended time returned the assessment roll, in
which the said bank was assessed upon money, notes,
and accounts in the sum of six thousand six hundred
dollars; that on October second the board of equaliza-
tion met pursuant to notice, and continued in session
until the seventh of that month, during which time
the assessments of several persons were examined and
altered, but no change was made in that of the bank;
that on October seventh the board ordered a reduc-
tion of ten per cent. to be made in the assessed value
of certain property,—not including money, notes, and
accounts,—and delivered the assessment roll to the
county court, with its certificate attached thereto,
showing that the equalization had not been completed;
that on October ninth the court met, pursuant to the
adjournment of September eleventh, to complete the
equalization, and a notice having been served upon
the bank to appear and show cause why its assess-
ment of money, notes, and accounts should not be in-
creased, the court on October twelfth made the fol-
lowing order: "In the matter of equalization of as-
sessment roll for 1893: Assessment of Douglas County
Bank. Now, at this time it is ordered by the court
that the assessment of money, notes, and accounts of
the Douglas County Bank for the year eighteen hun-
dred and ninety-three be increased to fifteen thousand
dollars, S. C. Flint, O. F. Godfrey, and Peter Hume

each appearing in person for said bank." It further appears that, the assessment having been increased in pursuance of said order, this proceeding was instituted, and it is alleged that the county court in making said order exceeded its jurisdiction, to the injury of the plaintiff's substantial rights; that the attempted increase of said assessment is unjust and unauthorized by any facts proved before or found by said court; that the assessment roll was not returned until October second, at which time the board of equalization met and approved the assessment of the Douglas County Bank; that the county court thereafter, without legal notice thereof, and in the absence of any certificate that the assessment had not been examined and approved, attempted to act as a board of equalization at an adjournment of the September term of said court; that no evidence whatever was taken or produced before the court upon which it could base an alteration of said assessment, and that its action in so doing was capricious and arbitrary. A writ of review having been issued and served, the county court returned the same with a certified copy of the record, as above recited, from which the circuit court found that the county court had exceeded its jurisdiction in making said order, and rendered a judgment setting it aside, from which the county appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. J. W. Hamilton.*

For respondent there were briefs and oral arguments by *Messrs. William R. Willis* and *A. M. Crawford.*

Opinion by MR. JUSTICE MOORE.

The record presents two questions for consideration: (1) Did the county court have jurisdiction of the subject matter and persons of the interested parties at the time it attempted to increase the assessment; and, if so, (2) Does the record show a judgment unimpeachable upon a direct attack?

1.  The first question suggested requires an examination of the statute prescribing the duties of the assessor, board of equalization, and county court in the matter of returning the assessment roll and equalizing the assessment.  The law requires the assessor to assess all the taxable property within his county and return the roll thereof to the county clerk on or before the first Monday in September, (Hill's Code, § 2752,) and it is made the duty of the county judge, county clerk, and assessor, as a board of equalization, to meet on the last Monday in August, and, if necessary, to continue in session one week, for the purpose of examining and correcting the assessment roll and equalizing the assessment: Code, §§ 2760, 2778.  And, to guard against the possible contingency of lack of time, the statute provides that the county court shall at its term in September in each year complete the equalization, (Code, § 2782,) but if the assessor is unable to complete the assessment by the last Monday in August the county court may at any regular term thereof, prior to the first Monday of September, extend the time for returning the assessment roll to a day certain, not later than the first Monday in October: Code, §§ 2752, 2777.  It is also made the duty of the assessor to give three weeks' public notice of the meeting of the board of equalization prior to the date of returning the roll, (Code, §§ 2760, 2777,) and, if the

28 OR.—32.

board is unable to complete the equalization during the week in which it is required to meet, it shall be the duty of the county court "at its next term thereafter sitting to transact county business," to complete such examination and correction, in the same manner and with like effect as the board of equalization is required to do: Code, § 2781. The record shows that the county court, on July seventeenth, eighteen hundred and ninety-three, at a regular term thereof, made an order extending the time for the return of the assessment roll to the first Monday in October, at which time, the roll having been returned, the board of equalization met pursuant to the assessor's notice, and continued in session one week; but being unable to complete its labors within that time, the roll was submitted to the county court for final equalization, and that on October twelfth the court increased the plaintiffs' assessment. The plaintiffs contend that, the court having at its regular session in September, adjourned to the ninth of October, when it convened on the latter date its session was a continuation of the September term, and not its "next term" after the meeting of the board of equalization, and hence the county court was at that time powerless to equalize or correct the assessment roll, and had no authority to do so until the next regular term after the September term.

The point for which the plaintiffs contend demands an examination of the terms of the county court required to be held in Douglas County and a definition of the word "term" as applied to a session thereof. The terms of said court, appointed by law, are held on the first Monday in January, March, May, July, September, and November, (Hill's Code, § 2335,) and a term may also be held at such other times as the court

in term or the county judge in vacation may appoint: Code, § 899. In *Tompkins* v. *Clackamas County,* 11 Or. 364 (4 Pac. 1210), it was held that when the statute referred to the terms of a county court, it meant the regular terms prescribed by law, and not the special terms appointed by the court or judge thereof. This opinion was rendered in the construction of a statute under the authority of which the county court of Clackamas County sought to establish a county road across the plaintiff's premises, and, the proceedings taken being for the purpose of appropriating private property to a public use, the court very properly construed the statute strictly. The commencement of every term is fixed by statute, and the end by the final adjournment for that term, so that, if it should sit pursuant to an order of adjournment made and entered upon the record in term time, it would not be another session of the court, but a continuation of the statutory term, and this is the case whether the adjournment be from one day to the next or for a longer period (*Bronson* v. *Schulten,* 104 U. S. 410,) and hence it follows that when the county court met on October ninth, pursuant to the adjournment of September eleventh, it was a continuation of the September term, and, if the statute is to be construed strictly, not its next term after the meeting of the board of equalization.

Every citizen owes a duty to the state to bear a just proportion of its burdens, and if the assessor should undervalue his property or omit a part thereof assessable for general taxation, he has no just cause for complaint if a board of equalization or county court adds thereto or increases the value placed upon it by the officer chosen for that purpose. The duty of supporting the state being incumbent upon the cit-

izen in proportion to his taxable property, the right to equalize the measure of his burden must be in the state, which, in the interest of the citizen, delegates this power to the board of equalization, and, if not completed by it within a given time, then to the county court for final equalization. It is presumed that official duty has been regularly performed, (Hill's Code, § 776, subdivision 15,) and, this being so, the list of property of the citizen returned by the assessor, as well as the value placed thereon, must be deemed *prima facie* correct, and the right of the board or court to add to the list or alter the value so ascertained being a delegated power, the measure of such power must be found in the statute conferring it. This would require the board or court, if the statute was held to be mandatory, to alter the assessment at the time and in the manner only as prescribed by law; but, as we understand the law, proceedings to equalize assessments of this character are to be construed much more liberally than an equalization of an assessment for muncipal purposes: 2 Desty on Taxation, 615. In the counties of Josephine, Curry, Coos, and Wallowa no terms of the county court are held after the first Monday in September until the first Monday in January: Code, § 2335. The county court at its term in September in each year is required to levy the county, state, and school taxes, (Code, § 2783,) and if the assessor in either of these counties should be unable to return his roll on the last Monday in August, and further time was granted him for that purpose, the county court could not, to give the statute a strict construction, equalize the assessment until the January term, if the board of equalization was unable to complete its labors within one week. The result of this would be that the county court must omit either the

equalization or the levy of taxes, and for this reason we cannot think that the legislative assembly meant by "the next term thereafter" the next regular term after the meeting of the board of equalization. We are strengthened in this belief from the language of section 2777, Hill's Code, which provides that the county court, at any regular term thereof, may extend the time for the assessor to return his roll, thereby implying that all other statutory requirements in relation to the assessment, equalization, and levy of taxes may be complied with at an adjourned term of the court. The assessment having been made to raise a public tax, there is no necessity for construing the statute strictly, and we hold that the language, "at its next term thereafter sitting to transact county business," means at the next session of the county court after the meeting of the board of equalization.

2. The court having jurisdiction of the subject matter, obtained jurisdiction of the persons of the plaintiffs by their voluntary appearance before it, for it is a universal rule, which admits of no exception, that if the court has jurisdiction of the subject matter, a general appearance gives jurisdiction of the person, (2 Encyclopedia of Pleading and Practice, 639,) and if the record fails, as in the case at bar, to show that the appearance was special, it will be presumed to have been general: *Deshler* v. *Foster,* Morris (Iowa), *403.

3. The plaintiffs' assessment having been entered on page 57 of the roll, they contend that it was approved by the board of equalization, and that this conclusively appears from the fact that the board altered an assessment entered on page 53 and another on page 114 thereof. This could only be so by indulging the pre-

sumption that the board of equalization began at the
first page of the assessment roll, and continued to ex-
amine and correct the successive entries therein in
regular order, during the week it was in session. The
assessor published a notice of the meeting of the
board of equalization, inviting interested taxpayers to
attend its session for the purpose of having their
assessment corrected; but in appearing in response
thereto it cannot be presumed, or even supposed, that
the persons whose names were entered on the assess-
ment roll appeared before the board of equalization in
the order in which their names were written or ar-
ranged by the assessor, nor does the fact that altera-
tions were made on the roll upon pages before and
after that upon which the assessment of the Douglas
County Bank was entered, show that the board ap-
proved the assessment of the bank.

4. It is contended that the county court could ac-
quire jurisdiction to alter an assessment only by means
of a certificate from the board of equalization that it
had not acted upon or equalized a given assessment,
and no certificate of that character having been is-
sued, the county court had no authority to alter this
assessment. The assessment roll contains a column
for the "Total value of taxable property," in which
the assessor carried out the aggregate value of the sev-
eral classes of property assessed. The next column
to the right is entitled "As equalized by the county
board," and it must be presumed that the board of
equalization entered in this column every assessment it
corrected or equalized, and, no entry of that character
having been made in this column opposite the assess-
ment of the Douglas County Bank, it was apparent to
the county court from the certificate made by the

board of equalization that the plaintiffs' assessment had not been equalized, and authorized the court to examine, correct, and equalize the same.

5. The county court having jurisdiction of the subject matter and of the persons, it only remains to be seen whether the order complained of is sufficient in form to withstand a direct attack. It will be observed that the judgment contains no recital that it appeared to the court from any evidence taken before it that the assessment complained of was incorrect, or that it should be increased; and the question is presented whether the entry of a judgment without a statement that any sum is due, or of any facts upon which it is predicated, is binding upon the parties affected thereby except in a collateral proceeding. Mr. Freeman, in speaking of the sufficiency of the journal entry of a judgment, says: "That whatever appears upon its face to be intended as the entry of a judgment will be regarded as sufficiently formal if it shows, (1) the relief granted; and (2) that the grant was made by the court in whose records the entry is written," (Freeman on Judgments, § 50,) and in another section the same learned author says: "No particular form is required in the proceedings of the court to render their order a judgment. It is sufficient if it is final, and the party may be injured": Freeman on Judgments, § 51. Mr. Black also says: "It is further to be noted, in connection with matters of form in judgments, that a much less degree of technicality and formality is required in the judgments of justices of the peace and other inferior courts than is exacted in respect to the judgments of courts of record": 1 Black on Judgments, § 115. "The judgment," says WHEELER, J., in *Hamilton* v. *Ward,* 4 Texas, 356, "raises a legal presumption

of the truth of every material averment in the petition or motion, which can only be rebutted by a statement of facts showing the absence of proof." And, further in the opinion, the same learned justice says: "It cannot, therefore, be a valid objection to the judgment that it does not recite the facts alleged in the motion and proved at the trial." If there be any ambiguity therein the pleadings may be read in connection with the judgment for the purpose of explaining the uncertainty. The judgment is the final order predicated upon the prior proceedings which may always be examined in aid of and to support the judgment: 1 Black on Judgments, § 123.

The plaintiffs, under the provisions of section 2780, Hill's Code, were served with a written notice which required them to appear before the county court, to show why their assessment of money, notes, and accounts should not be increased, and, in obedience thereto, they personally appeared for that purpose. This notice is the pleading by which the court obtained jurisdiction of the persons, and may be read in connection with the order founded thereon for the purpose of explaining the latter. An examination of the notice conclusively shows the nature of the inquiry proposed, and the order of the court based thereon is equivalent to a finding that the class of property specified in the notice and order was assessed too low, and for that reason it was the judgment of the court that the assessment thereof be increased. No board of equalization can arbitrarily increase the assessment of a taxpayer, for to do so would be a confiscation of property; but the pleadings having in effect stated a cause of action, and an order having been made thereon, it must be presumed that sufficient evidence was adduced from which the court concluded that the

assessment should be increased to the amount found by it. In *Becker* v. *Malheur County*, 24 Or. 217, BEAN, J., in speaking of the duties of a board of equalization and the presumptions indulged in favor of its conclusions, says: "There is no provision of law of which we are aware making it the duty of the board to reduce to writing or preserve the evidence before it in the matter of the equalization of taxes, and, although it is an inferior tribunal, every presumption exists in favor of the regularity of its proceedings, after it has once acquired jurisdiction." The judgment of the court annulling the increase in the assessment being erroneous, the judgment will be reversed and the cause remanded with instructions to dismiss the writ of review.

REVERSED.