(November 27, 1909.)

FIRST NATIONAL BANK OF WEISER et al., Respondents, v. WASHINGTON COUNTY et al., Appellants.

[105 Pac. 1053.]

TAXATION—POWER OF ASSESSOR—NOTICE TO TAXPAYER—RAISE ON VALUATION OF BANK STOCK—WAIVER OF NOTICE—DEDUCTIONS FROM VALUATION OF STOCK—WHO MUST CLAIM DEDUCTIONS—TAXING NATIONAL BANK STOCK.

1. The county assessor has no power or authority to bind the county or its board of equalization by any agreement he may make or enter into with the taxpayer as to the valuation to be placed upon any specific property, or the waiver of deductions and exemptions.   His duties are prescribed by law, and the taxpayer is chargeable with notice of the scope of his authority and the power with which he is invested and the limitations thereof.   He is required to assess all the taxable property of his county at its "full cash value," and has no authority to assess it otherwise.

2. Under the provisions of sec. 1692, Rev. Codes, the county commissioners of each county are required to meet on the second Monday in July, in each year, as a board of equalization for the purpose of examining the assessment-roll and equalizing the assessment of property throughout the county, and enforcing and compelling the assessment of property and raising or causing to be raised any assessment of property which, in the judgment of the board, has not been assessed at a fair cash value.   No special, separate, or personal notice of this meeting is required to be given to the taxpayer of any action proposed to be taken, but any raise, change or alteration in the assessment of the property of any taxpayer amounts only to a proposal by the board that such property should be so raised, or the assessment changed or altered, and notice

thereof is thereafter given by the clerk in conformity with the provisions of sec. 1699, Rev. Codes, of the time and place when and where the taxpayer may be heard to object and protest against the proposed raise, change, or alteration.

3. Under the provisions of sec. 1701, Rev. Codes, the board is required to again meet as a board of equalization on the fourth Monday of July, in each year, for the purpose of hearing the objections that may be made by any party whose assessment it has proposed to change, alter, or modify; and it is at such meeting that the order is made final and that the change is authorized to be entered upon the assessment-roll, in conformity with the requirements of sec. 1700, Rev. Codes.

4. Where the board of equalization has made an order proposing a raise on the valuation of any specific property, and the person against whom such property is assessed thereafter appears at the time and place fixed for the hearing on such proposed change and protests against the same and submits his evidence, he thereby waives the service of notice and cannot thereafter be heard to object to the action of the board on the ground that he was not served with notice.

5. The deduction allowed to the taxpayer on account of unsecured debts, due to *bona fide* residents of this state as provided for and treated of in secs. 1682, 1683, and 1685, Rev. Codes, is a personal right and privilege accorded the taxpayer and must be claimed by the taxpayer himself.

6. Under the provisions of secs. 1682, 1683, and 1685, Rev. Codes, together with the form of list incorporated in sec. 1685, and made a part thereof, the shares of stock in national and state banks are classed along with "unsecured, solvent debts" due from others to the taxpayer, and the taxpayer is accordingly entitled to a deduction therefrom of his "unsecured debts due to *bona fide* residents of this state."

7. One claiming the right to deduct unsecured debts must personally waive the right to plead the bar of the statute of limitations against any of the claims listed and for which he claims a deduction.

8. The owner of bank stock is not entitled to a proportionate or corresponding reduction in valuation thereof for the purpose of taxation on account of any of the capital, surplus, or undivided profits of such bank being deposited in any bank or banks outside of the state.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Ed. L. Bryan, Judge.

Action by the First National Bank of Weiser and its stockholders to review the action of the board of equalization of Washington county ordering certain property assessed against the bank, and in also ordering a raise in the valuation of the capital stock of the bank as the same had been assessed against the stockholders. Judgment for the plaintiffs, and the defendants appeal. Judgment *affirmed* in part and *reversed* in part.

Harris & Smith, and Richards & Haga, for Appellants.

Respondents are held to a knowledge of the meeting of the board of equalization on the second Monday of July of each year for the equalization of assessments, regardless of any notice, for such is the statutory provision, sec. 1692, Rev. Codes. (*Inland Lumber Co. v. Thompson,* 11 Ida. 520, 114 Am. St. 274, 83 Pac. 933.) If a party appear in a suit or proceeding, he thereby cures or waives whatever defects may exist in the original process itself necessary to bring a party into court, or whatever irregularity may have occurred in the service of such process. (*Moore v. Koubly,* 1 Ida. 58; *Godfrey v. Douglass Co.,* 28 Or. 446, 43 Pac. 174; *Hayes v. Shattuck,* 21 Cal. 52; 4 Cent. Dig., col. 2817, and cases cited.)

The shares in national banks are taxed at their actual value as affected by the surplus and undivided profits, and this must be without regard to whether such surplus and undivided profits are in this state or out of this state, so long as they affect the value of such shares. (*Palmer v. McMahon,* 133 U. S. 660, 10 Sup. Ct. 324, 33 L. ed. 775; *Bank Tax Cases,* 70 U. S. 387, 18 L. ed. 229; *First Nat. Bank v. Farwell,* 7 Fed. 518, 10 Biss. 270.)

To entitle a shareholder to a deduction of his individual indebtedness from the value of his stock, he must make the necessary claim provided for in paragraph 6 of sec. 1682, Rev. Codes of Idaho. (*Williams v. Weaver,* 100 U. S. 547, 25 L. ed. 709; *Stanley v. Albany Co.,* 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. ed. 1000; *Supervisors v. Stanley,* 105 U. S. 305, 26 L. ed. 1044.)

The respondent had the right to appear before the board and show that such increase or "raise" in his assessment

should not be made. We are not authorized to presume that said order was made without evidence. The board had jurisdiction to make said order. That is the only question before us for determination. (*Murphy v. Board*, 6 Ida. 749, 59 Pac. 715.) The record does not show what evidence was before the board, but we must presume that the board had proper evidence before it on which to base its decision. (*Becker v. Malheur Co.*, 24 Or. 217, 33 Pac. 544; *Godfrey v. Douglass County*, 28 Or. 446, 43 Pac. 174.)

The scope of this review is confined to the question whether the board of equalization had jurisdiction and proceeded regularly. (Sec. 4968, Rev. Codes; *Smith v. City of Portland*, 25 Or. 297, 35 Pac. 666; *McConnell v. State Board*, 11 Ida. 662, 83 Pac. 494; 4 Ency. Pl. & Pr. 287; 6 Cyc. 832.) The writ of review is a statutory remedy. The limitations and the authority for its issuance in any particular case must be sought for and found in the statutes. (*McConnell v. Board, supra; Adelman v. Pierce*, 6 Ida. 294, 55 Pac. 658.)

The writ is only granted when there is no appeal or no plain, speedy and adequate remedy, and when some tribunal, board or officer *exercising judicial functions* has exceeded the jurisdiction conferred upon such tribunal, board or officer. (Sec. 4962, Rev. Codes; *Rogers v. Hayes*, 3 Ida. 598, 32 Pac. 259; *Dahlstrom v. Portland Min. Co.*, 12 Ida. 87, 85 Pac. 916.)

Lot L. Feltham, for Respondents.

Secs. 28, 29, 32 and 43 of the revenue act of 1901 clearly point out the statutory right to offset debts against stocks in banks. Besides this, there is abundant authority to support the contention that "other moneyed capital" includes all unsecured notes, bonds, choses in action, loans on account, etc. (*People v. Weaver*, 100 U. S. 543, 25 L. ed. 705; *Pelton v. Com. Nat. Bk.*, 101 U. S. 143, 25 L. ed. 901; *Palmer v. McMahon*, 133 U. S. 660, 10 Sup. Ct. 324, 33 L. ed. 775; *Bank of Redemption v. Boston*, 125 U. S. 60, 8 Sup. Ct. 772, 31 L. ed. 689; *First Nat. Bk. v. Chapman*, 173 U. S. 205, 19 Sup. Ct. 407, 43 L. ed. 669.)

The property of the bank, consisting of its money, furniture, fixtures, and notes are its property, and the stock held by the stockholders is but the paper representative of said property. To assess the stock and also assess any part of the property, except the real estate, is to double assess the association. In this respect the assessment made by the board was void and without jurisdiction. (*City and County of San Francisco v. Crocker-Woolworth Nat. Bk.,* 92 Fed. 273.)

If stocks in a national bank are not credits, against which the respective stockholders may offset their debts due to *bona fide* residents of Idaho, then the entire assessment against said stock is *illegal and void,* because in such case a clear discrimination would be made against the owners of national bank shares and in favor of the owners of credits arising from other moneyed capital. (Sec. 5219, U. S. Rev. Stat.; *Miller v. Heilbron,* 58 Cal. 133; *Dodge v. Nevada Nat. Bk.,* 109 Fed. 727, 48 C. C. A. 626; *McHenry v. Downer,* 116 Cal. 20, 47 Pac. 779, 45 L. R. A. 737; *Wasson v. First Nat. Bk.,* 107 Ind. 217, 8 N. E. 97; *First Nat. Bank of Albia v. City Council,* 86 Iowa, 37, 52 N. W. 334; *Bressler v. Wayne Co.,* 25 Neb. 473, 41 N. W. 356.)

The article of the state constitution which provides that all property shall be assessed at a uniform rate is violated when it is shown that assessing officers assess in any considerable amount property at one-third or one-half and other property at two-thirds of its cash value. (*First Nat. Bk. v. Lindsay,* 45 Fed. 619.)

Shares in national banks shall not be assessed to the bank *in solido,* but only the shares to the individual owners, and they *must be taxed separately* in order that the owner may deduct from their value the amount of his personal indebtedness, where the state laws permit such deductions and require equality of taxation. (*First Nat. Bk. v. City of Richmond,* 39 Fed. 309.) The taxation of national bank shares by the Indiana statute without permitting the shareholder to deduct from their assessed value the amount of his *bona fide* indebtedness, as in the case of other investments of moneyed capital,

is a discrimination forbidden by the act of Congress. (*Britton v. Evansville Nat. Bk.*, 105 U. S. 322, 26 L. ed. 1053.)

"Where there is any irregularity or illegality in the proceedings of the assessors, a writ of *certiorari* will lie to review and correct such errors." (4 Ency. of Pl. & Pr. 117, and notes 1 and 2.) "In such cases the whole assessment will be set aside." (*Bouton v. Brooklyn*, 2 Wend. (N. Y.) 395; *People v. Board of Assessors*, 39 N. Y. 81; *Baldwin v. Calkins*, 10 Wend. (N. Y.) 167.)

The review may be extended to every issue of law and fact involved in the question of jurisdiction, and not only the record, but the evidence itself, when necessary for the determination of this question, must be returned. (*Sweeney v. Mayhew, Judge*, 6 Ida. 455, 56 Pac. 87; *People v. Board*, 14 Cal. 479.)

If the owners of other moneyed capital are permitted to deduct from the assessed value thereof the amount of debts which they owe, the same privilege must be allowed to the holders of national bank stock. (*People v. Weaver*, 100 U. S. 539, 25 L. ed. 705; *Britton v. Evansville Nat. Bk.*, 105 U. S. 322, 26 L. ed. 1053; *Supervisors v. Stanley*, 105 U. S. 305, 26 L. ed. 1044; *First Nat. Bk. of Leoti v. Fisher*, 45 Kan. 726, 26 Pac. 482; *Mercantile Nat. Bk. v. Shields*, 59 Fed. 952.)

"The board of equalization acting on assessments is a tribunal of limited and inferior powers, and hence its jurisdiction must affirmatively appear on the record of its proceedings." (*Copper Queen Con. M. Co. v. Board of Eq.*, 7 Ariz. 364, 65 Pac. 149; *Montana Ore Purchasing Co. v. Maher*, 32 Mont. 480, 81 Pac. 13.)

"Failure to give a taxpayer the ten days' notice of a proposed increase in his assessment is not waived by his subsequently appearing and securing a reduction of the increased assessment." (*Western Ranches, Ltd., v. Custer County*, 28 Mont. 278, 72 Pac. 659, and cases cited.) Previous notice must be given to the taxpayer, and this is jurisdictional. (1 Cooley on Taxation, 3d ed., pp. 626-628; *Dykes v. Lock-*

*wood Mort. Co.,* 2 Kan. App. 217, 43 Pac. 268; *Topeka Water Supply Co. v. Roberts Co. Treas.,* 45 Kan. 363, 25 Pac. 855.)

AILSHIE, J.—This action was instituted in the district court for the purpose of reviewing the action of the board of equalization of Washington county in ordering the furniture and fixtures of respondent, the First National Bank of Weiser, placed on the assessment-roll for 1907, and in also raising the assessment on the shares of the capital stock in the respondent bank as assessed against its stockholders. A writ issued, and the board of equalization, acting through its clerk, made return to the writ, and after a hearing thereon the district court made an order vacating and setting aside the order of the board both in assessing the furniture and fixtures of the bank and in raising the assessed valuation of the capital stock of the bank. This is an appeal from the order and judgment of the district court.

The facts are as follows: On about June 29, 1907, the respondent bank listed its shares of stock for taxation, furnishing the assessor with a statement of the names of the stockholders together with the number of shares of stock owned by each, the capital stock of the bank, surplus, and undivided profits, and made a notation on the list as follows: "First National Bank capital stock @ 60%, $50,000. No exemptions to be claimed." The bank claims that it had an agreement with the assessor at the time it furnished the list that in consideration of the stock being assessed upon a basis of $30,000 for the entire valuation of the bank's assets, the stockholders would not claim any offsets on account of any unsecured debts owing to *bona fide* residents of the state. The stock was accordingly assessed by the assessor at $30 per share. On July 9, 1907, the board of equalization ordered the furniture and fixtures of the bank placed on the roll and assessed at a valuation of $600, and at the same time ordered that the assessment of the shares of the capital stock of the bank be raised $18 per share, making the total assessment of such stock $48 per share. On July 10, 1907, the clerk of the board gave notice of the proposed raise as au-

thorized and provided for in sec. 1699, Rev. Codes. On July 22, 1907, in compliance with the requirements of the notice, the bank and also the stockholders appeared through counsel and filed a protest against the proposed raise and also against the assessment of its furniture and fixtures, and supported such protests with affidavits. A hearing appears to have been had before the board on the 22d, 24th, and 26th days of July, and on the latter date the board made its order denying the application both as to the furniture and fixtures of the bank and the proposed raise of $18 per share on the capital stock of the bank, and ordered that the assessment be made as proposed by the order of July 9th.

It is conceded on this appeal that the action of the board in ordering the bank furniture and fixtures placed on the assessment-roll and assessed at the sum of $600 was without jurisdiction and is void, and consequently that portion of the order will not be considered or discussed by us in this opinion.

It is contended by the appellants, however, that the action of the district court in ordering canceled and vacated the order of the board of equalization in raising the assessed valuation of the capital stock of the bank was error and that it should be reversed. In the first place, it is a well-established rule in this court that the writ of review will only issue where a tribunal, board or officer, exercising judicial functions, has exceeded its jurisdiction as such tribunal, board, or officer, and there is no plain, speedy, or adequate remedy at law. It has likewise been held that if the order made by the inferior tribunal, board or officer was within its jurisdiction, however erroneous the action may have been, it cannot be reached by writ of review. (*People v. Lindsay*, 1 Ida. 394; *Rogers v. Hays*, 3 Ida. 597, 32 Pac. 259; *Chemung Min. Co. v. Hanley*, 11 Ida. 302, 81 Pac. 619; *Dahlstrom v. Portland Min. Co.*, 12 Ida. 87, 85 Pac. 916; *Canadian Bank of Commerce v. Wood*, 13 Ida. 794, 93 Pac. 257; *Utah Association of Credit Men v. Budge*, 16 Ida. 751, 102 Pac. 691.)

The question, therefore, which presented itself to the trial court and presents itself to this court on appeal is not whether

the board acted erroneously in raising the valuation on such bank stock, but whether it had taken the necessary steps required· by law to give it jurisdiction to act at all. If the board had· pursued the statutory and jurisdictional steps, even though it drew an erroneous conclusion from the evidence submitted as to the value of the stock, its action in making the raise cannot be disturbed on writ of review. The writ does not lie, under our statute, to review the facts of the case, except in so far as the facts are essential to determine the jurisdictional question. Our further consideration of the case must therefore be devoted to an examination of the statutory requirements as applied to the action taken by the board.

In the first place, the assessor had no power or authority to bind the county or its board of equalization by any agreement he might enter into with the taxpayers. His duties are prescribed by law, and the taxpayer has notice of the scope of his authority and the power with which he is invested and of the limitations thereof. The duty of the assessor is to assess all of the taxable property of his county at its "full cash value," and he has no legal right or authority to assess property in any other manner or at any other valuation. So, in this case, any agreement or understanding had between the bank and the assessor could in no manner bind the county or its board of equalization, and has no place in the consideration of this case.

In the second place, the board of equalization is vested by law with the power and authority to equalize assessments and to direct and require the assessor to assess any taxable property that has escaped assessment, increase any valuation, or add to the amount, number, quantity or value of any property when a faulty, inaccurate, or incomplete list has been furnished or rendered. Sec. 1672, Rev. Codes, authorizes and directs the assessment of the shares of stock held by any person in any banking association located in this state, organized under the laws, either of the United States or of this state, subject, however, "to· all deductions allowed in the assessment of other moneyed capital, and subject to the restriction that taxation of such shares must not be at a greater

rate than is assessed on any other moneyed capital in the hands of individual citizens of the state in the place where such bank is located.'' It is, therefore, clear that the board of equalization of Washington county, when considering the raise of assessment on the shares of the capital stock of the respondent bank, was in session pursuant to, and in conformity with, the statute of this state and was dealing with a subject over which it had jurisdiction. If, therefore, it acquired jurisdiction of the person of the taxpayer or taxpayers involved, it was clearly not acting without its jurisdiction, and the writ in this case would not lie. This is the point, however, at which counsel for respondent makes the persistent contention that his clients were never accorded their day in court, in that they were never served with notice prior to the raise of assessment. This contention, we think, grows out of a misapprehension of the effect of the order of the board of equalization and the direction and requirements of sec. 1692 of the Rev. Codes. Under the provisions of the latter section, the board of county commissioners of each county in the state is required to meet on the second Monday in July, in each year, as a board of equalization, for the purpose of examining the assessment-roll and equalizing the assessment of property throughout the county, and of enforcing and compelling the assessment of property, and raising, or causing to be raised, any assessment of property which in the judgment of the board has not been assessed at a fair cash value. The time of the holding of this meeting is fixed by law, and that within itself is notice to every taxpayer. In addition thereto the clerk of the board is required to publish notice of the time and place of meeting of the board of equalization. No personal or separate notice, however, is required to be given to the taxpayer of any contemplated action to be had at this meeting. The board met, and after an examination of the roll, among other things, ordered that the capital stock of the First National Bank of Weiser be raised from $30 per share to $48 per share. Under the provisions of the statute, such an order is not final and is not extended on the tax-roll. It amounts

merely to a proposal by the board that the taxpayer's property should be raised in assessed valuation to the extent designated in the order, and that if the taxpayer has any reason or cause to show why the proposed raise should not be made, he must appear at a time and place to be designated in the notice given by the clerk and make a showing. Sec. 1699, Rev. Codes, provides, among other things, as follows:

"All persons whose assessment is altered, modified, or affected in the amount of valuation of property charged to them, shall be notified by the clerk of said board, by letter deposited in the United States mail, postpaid and addressed to such person interested, at least ten days before the final action is taken in fixing and equalizing such assesment, of the day fixed when he may be heard upon the matters affecting the assessment of his property for taxation, which shall be on the fourth Monday in July of each year, or as soon thereafter as he can be heard or his matter be reached."

Such proceeding is in conformity with the general rules of practice in acquiring jurisdiction before all judicial and quasi-judicial bodies. Notice is given to the party whose rights are to be affected, but it cannot be a general blanket notice but must specify the things proposed to be done. A simple notice that it is proposed to raise the assessed valuation of the taxpayer's property would be very vague and uncertain, but a notice that it is proposed to raise the property $18 per share in valuation is specific. The taxpayer may be satisfied with the raise and not care to object or make any protest, but if it was proposed to raise him $50 per share, he might have objections to make; consequently, the law requires that he be notified of the proposed change and that if he has cause to show, he appear at a specified time and place to present his objections. That is just what was done in this case.

Under the provisions of sec. 1701, Rev. Codes, the board is required to again meet on the fourth Monday in July for the purpose of hearing the objections that may be made by any party whose assessment is proposed to be changed, corrected, modified or altered in any respect. The provisions of that

section were complied with in this case; the board met, and the respondent bank, together with its stockholders, appeared and filed their protest and presented their objections to the proposed raise. Any change, correction, or alteration made in the assessment is not extended on the roll until after this final order is made. It is so provided by sec. 1700, Rev. Codes. In other words, a raise, alteration or change proposed by the board at its first meeting, under sec. 1692, does not become final until after final action has been taken thereon under the provisions of sec. 1701, Rev. Codes. We had occasion to consider the question of notice under these provisions of the statute in *Inland Lumber & Timber Co. v. Thompson*, 11 Ida. 508, 114 Am. St. 274, 83 Pac. 933, and we are still in entire accord with what was there held. What is said here is in conformity with the decision of the court in that case.

There is still another reason, however, in this case why the respondent is not in a position to complain of any lack or defect of notice, even if notice had not been given. After the first order was made for a raise in the assessment of the stock in respondent's bank, the bank and its stockholders made a personal appearance before the board of equalization at the time and place designated and presented their protests and objections to the proposed raise. This was a waiver of notice, and served all the purposes that were intended to be accomplished by the issuance and service of the notice itself. (*Moore v. Koubly*, 1 Ida. 55 (58); *Godfrey v. Douglass County*, 28 Or. 446, 43 Pac. 171; *O'Dell v. Rogers*, 44 Wis. 136; *Hayes v. Shattuck*, 21 Cal. 52.)

At the hearing before the board of equalization, on the protest filed by the bank and its stockholders, an affidavit was filed by the president and cashier of the bank, in which it was shown that six of the stockholders, owning 637 shares of the capital stock, were entitled to an offset in the aggregate of $21,876.60 for unsecured debts due from such stockholders to *bona fide* residents of this state. The board declined to allow the deductions, and this action on the part of the board is urged here in support of the judgment of the district

court. Such action was not fatal to the jurisdiction of the board of equalization. In the first place, no statement was ever filed by the stockholders themselves, either with the assessor or before the board of equalization. At no time did they ever list the "unsecured, solvent debts due them from others, including deposits in any bank or with any banking firm or association," as is required by the form of statement which is made a part of sec. 1685, Rev. Codes. Even if they had complied with the law in filing statement and demanding deductions, they could not combine their indebtedness and claim the aggregate as a deduction against the aggregate assessment of their stock. The deductions are allowed to each stockholder separately against the stock owned by him individually. One stockholder cannot be allowed deductions for the indebtedness of another stockholder.

Reading secs. 1682, 1683 and 1685 together, it seems that the legislature intended that every taxpayer shall list all "solvent debts" due him, and all deposits he may have in any bank together with all shares of stock he may hold in any national or other bank, and that he is entitled to a deduction from the total amount thereof in the sum of his "unsecured debts due to *bona fide* residents of this state." This is emphasized by the affidavit on the list or statement which immediately precedes the blank spaces on the notice to be filled in with the names of the persons to whom the debts are due and the amounts thereof. This affidavit must be made by the taxpayer. It has reference to matters that are within his personal knowledge and deals with a personal claim and right that the taxpayer may set up. The object of requiring him to list his debts and the names of his creditors is for the purpose of enabling the officers to verify the truth of the statement and to subject the taxpayer to the pains and penalties of perjury if he swears falsely. While the bank is authorized and required to list the names of its stockholders and the number of shares held by each, it has no authority to claim the deductions to which the taxpayer is entitled. The information which the bank is required to furnish is within the knowledge of the bank and a matter

of record on its books, but the stockholder's indebtedness is not within its knowledge, and besides it has no way of binding the stockholders by the affidavit and statement or declarations of its officers. Further, the taxpayer who claims such deduction is required to specifically waive the right to plead the bar of the statute of limitations to any of the claims thus listed. It is self-evident that the bank cannot waive the right of any of its stockholders to plead the bar of the statute of limitations against any of their personal and individual debts and liabilities. In the case at bar neither the bank nor its stockholders listed any unsecured solvent debts due from others to such stockholders, and at no time did any one of the stockholders personally claim the deductions herein contended for, nor did they at any time make the affidavit required to be made by the taxpayer. These reasons alone are sufficient to dispose of that phase of the controversy.

It is also contended by respondent that in assessing the capital stock of the bank to its stockholders, a reduction should have been made for the amount of money the bank had deposited in other banks outside the state. It was shown by the affidavit of the president that the bank had some $31,000 on deposit in banks outside of the state of Idaho, and a proportionate reduction in the valuation of the shares of stock was claimed on this account. There is no merit in this contention. Under the provisions both of sec. 5219 of the Rev. Stat. of the United States and sec. 1672, Rev. Codes of this state, the shares of stock in any national banking association owned by nonresidents of the state must be taxed in the city or town where the bank is located, and not elsewhere. The capital and surplus of the bank is not assessed, and indeed none of the property of the bank except its real estate can be assessed against the bank. Without the permission of Congress the state could not assess such property, either in the hands of the bank or its stockholders, but under the grant to the states contained in sec. 5219, U. S. Rev. Stat., the state is permitted to tax the real estate of the bank against the bank and the shares of stock against the stockholders, subject to the proviso that such property shall never be assessed

"at a greater rate than is assessed on any other moneyed capital in the hands of individual citizens of the state in the place where such bank is located." (*People v. Weaver*, 100 U. S. 539, 25 L. ed. 705; *Pelton v. National Bank*, 101 U. S. 143, 25 L. ed. 901.) The value of stock in the hands of the stockholder is measured by the amount of capital, the surplus, and undivided profits of the bank. It makes no difference whether such capital, surplus and undivided profits be on deposit in the bank vaults or in banks outside of the state, it is still the property of the bank, and as such enhances the value of the stock in the hands of the stockholder.

Counsel have also argued the question of misjoinder of parties in this case, but we do not think the point is well taken, and shall not further consider it in this opinion.

The judgment of the lower court will be affirmed as to that part of the order vacating the assessment of the furniture and fixtures of the bank, and must be reversed as to that part of the order vacating and annulling the action of the board in raising the valuation of the capital stock of the bank. The judgment is reversed in the particular above mentioned, and the cause is remanded to the district court, with direction to the court to set aside and vacate the judgment in so far as it affects the action of the board of commissioners in raising the assessed valuation of the bank stock. Costs awarded in favor of appellant.

Sullivan, C. J., and Stewart, J., concur.

Petition for rehearing denied.